---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

STATE FARM FLORIDA INSURANCE COMPANY,

*Appellant/Cross-Appellee,*

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

*Appellee/Cross-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
15-CV-20941-JAL

---

## ANSWER BRIEF AND INITIAL BRIEF ON CROSS-APPEAL OF
## APPELLEE/CROSS-APPELLANT LIBERTY MUTUAL FIRE
## INSURANCE COMPANY

---

Jonathan R. Rosenn, Esq.
Jeffrey S. Lapin, Esq.
Lapin & Leichtling, LLP
255 Alhambra Circle, Suite 600
Coral Gables, FL 33134
Telephone No.:   (305) 569-4100
Facsimile No.:   (305) 569-0000

## **CERTIFICATE OF INTERESTED PERSONS**

Appellant, Liberty Mutual Fire Insurance Company ("Liberty"), pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26, certifies that the following is a list of persons and entities who have, or may have, an interest in the outcome of this case:

1. Faller, Laurea A., Esq., counsel for Appellee

2. Green, Jay B., Esq., counsel for Appellee

3. Green & Ackerman, P.A., counsel for Appellee

4. Lapin, Jeffrey S., Esq., counsel for Appellant

5. Lapin & Leichtling, LLP, counsel for Appellant

6. Lenard, Hon. Joan A., the U.S. District Court Judge below

7. Liberty Mutual Fire Insurance Company, Appellant

8. Liberty Mutual Group Inc.

9. Liberty Mutual Holding Company Inc.

10. LMHC Massachusetts Holding Inc.

11. Rosenn, Jonathan R., Esq., counsel for Appellant

12. Russo, Elizabeth K., Esq., counsel for Appellee

13. Russo Appellate Firm, P.A., counsel for Appellee

14. State Farm Florida Insurance Company, Appellee

## <u>CORPORATE DISCLOSURE STATEMENT</u>

I hereby certify that no publicly traded company or corporation has an interest in the outcome of this appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Liberty believes oral argument is unnecessary for the disposition of this case.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

CORPORATE DISCLOSURE STATEMENT ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS........................................................................................ iv

TABLE OF AUTHORITIES ............................................................................... viii

ANSWER BRIEF OF APPELLEE.........................................................................1

STATEMENT OF THE ISSUES.............................................................................1

STATEMENT OF THE CASE.................................................................................2

    I.     NATURE OF THE CASE.............................................................................2

    II.    COURSE OF PROCEEDINGS....................................................................2

         A. THE UNDERLYING LAWSUIT AGAINST LIBERTY AND STATE FARM'S
            NAMED INSURED RITEWAY ...............................................................2

         B. COURSE OF PROCEEDINGS IN THIS ACTION .............................................4

         C. STATEMENT OF THE FACTS ................................................................11

SUMMARY OF ARGUMENT ...........................................................................13

    I.     LIBERTY ALLOCATED THE SETTLEMENT SUMS TO A CLAIM
         COVERED UNDER STATE FARM'S CONTRACTORS POLICY,
         SATISFYING THE REQUIREMENTS OF FLORIDA LAW ...............13

    II.    LIBERTY DID NOT PAY ANY PORTION OF THE SETTLEMENT
         SUMS TO RESOLVE POTENTIAL LIABILITY UNDER COUNT I OF
         THE UNDERLYING LAWSUIT, AS STATE FARM ERRONEOUSLY
         CONTENDS .........................................................................................15

    III.   THE DISTRICT COURT CORRECTLY FOUND STATE FARM
         WAIVED ITS DEFENSE OF EXHAUSTION BY PRIOR
         PAYMENT .........................................................................................16

IV.    THE JUDGMENT IS NOT IN EXCESS OF POLICY LIMITS, AS STATE FARM ERRONEOUSLY CONTENDS ....................................16

V.    THE DISTRICT COURT CORRECTLY APPLIED THE STATE FARM POLICY'S TERMS AND NEVER HELD THE CERTIFICATE OF INSURANCE CONSTITUED A SEPARATE GRANT OF COVERAGE ...............................................................................16

VI.   THE DISTRICT COURT CORRECTLY HELD STATE FARM'S ADDITIONAL INSURED ENDORSEMENT, PREPARED YEARS AFTER THE LOSS, COULD NOT RETROACTIVELY LIMIT THE SCOPE OF COVERAGE AVAILABLE TO LIBERTY UNDER STATE FARM'S CONTRACTOR'S POLICY ...................................................17

ARGUMENT ........................................................................................17

I.    LIBERTY'S RESPONSE TO STATE FARM'S "ARGUMENTS ON THE AMOUNTS OF RECOVERY ISSUES".......................................17

A. LIBERTY ALLOCATED THE SETTLEMENT SUMS TO A CLAIM COVERED UNDER STATE FARM'S CONTRACTORS POLICY, SATISFYING THE REQUIREMENTS OF FLORIDA LAW ........................................................17

1. Standard of Review ......................................................................17

2. Liberty's Allocation of All Settlement Payments to a Single Covered Claim Satisfied Florida Law's Requirement that an Insured Allocate Between Covered and Non-Covered Claims to Recover from the Insurer .............................................................18

3. The District Court Correctly Found Count II in the Underlying Lawsuit Was Covered under State Farm's Contractors Policy......23

B. LIBERTY DID NOT PAY ANY PORTION OF THE SETTLEMENT SUMS TO RESOLVE POTENTIAL LIABILITY UNDER COUNT I OF THE UNDERLYING LAWSUIT, AS STATE FARM ERRONEOUSLY CONTENDS.........................28

C. THE DISTRICT COURT CORRECTLY FOUND STATE FARM WAIVED ITS DEFENSE OF EXHAUSTION BY PRIOR PAYMENT .....................................30

1. Finding of Waiver Reviewed for Abuse of Discretion .................30

2. The District Court Correctly Found State Farm Waived Exhaustion by Prior Payment as a Defense .....................................................30

D. THE JUDGMENT IS NOT IN EXCESS OF POLICY LIMITS, AS STATE FARM ERRONEOUSLY CONTENDS ................................................................35

II. LIBERTY'S RESPONSE TO STATE FARM'S "ARGUMENTS ON THE SCOPE OF COVERAGE ISSUES"..................................................38

A. THE DISTRICT COURT CORRECTLY APPLIED THE STATE FARM POLICY'S TERMS AND NEVER HELD THE CERTIFICATE OF INSURANCE CONSTITUTED A SEPARATE GRANT OF COVERAGE...............................38

B. THE DISTRICT COURT CORRECTLY HELD STATE FARM'S ADDITIONAL INSURED ENDORSEMENT, PREPARED YEARS AFTER THE LOSS, COULD NOT RETROACTIVELY LIMIT THE SCOPE OF COVERAGE AVAILABLE TO LIBERTY UNDER STATE FARM'S CONTRACTOR'S POLICY ...................41

CONCLUSION .....................................................................................42

LIBERTY'S PRINCIPAL BRIEF ON CROSS-APPEAL ......................................43

STATEMENT OF JURISDICTION........................................................................43

STATEMENT OF ISSUES .................................................................................44

STATEMENT OF THE CASE...............................................................................45

I. COURSE OF PROCEEDINGS BELOW ................................................47

II. STATEMENT OF FACTS....................................................................47

III. STANDARD OF REVIEW...................................................................53

SUMMARY OF THE ARGUMENT .......................................................................53

I. THE DISTRICT COURT ERRED BY FINDING COVERAGE AVAILABLE TO LIBERTY UNDER STATE FARM'S UMBRELLA POLICY WAS LIMITED TO VICARIOUS LIABILITY FOR THE ACTS OF THE NAMED INSURED.....................................................53

LAPIN & LEICHTLING, LLP, 255 ALHAMBRA CIRCLE, SUITE 600, CORAL GABLES, FLORIDA 33134 (305) 569-4100

ARGUMENT ...........................................................................................54

I.    THE DISTRICT COURT ERRED BY FINDING THAT COVERAGE
AVAILABLE TO LIBERTY UNDER STATE FARM'S UMBRELLA
POLICY WAS LIMITED TO ITS VICARIOUS LIABILITY FOR THE
ACTS OF THE NAMED INSURED .......................................................54

CONCLUSION ......................................................................................63

CERTIFICATE OF COMPLIANCE .....................................................63

CERTIFICATE OF SERVICE ..............................................................64

Case Nos.: 20-12970-GG & 20-13637-GG

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Ahern v. Odyssey Re (London) Ltd.*, 788 So. 2d 369 (Fla. Dist. Ct. App. 2001) ....21

*Am. Cas. Co. of Reading Pa. v. Health Care Indem., Inc.*, 613 F. Supp. 2d 1310 (M.D. Fla. 2009) ...................................................................................................19

*Amerisure Ins. Co. v. Auchter Co.*, 2017 WL 4862194 (M.D. Fla. Sept. 27, 2017) .........................................................................................................................26

*Auto-Owners Ins. Co. v. Ennulat*, 231 S.W. 3d 297 (Mo. App. Ct. 2007) .............21

*Auto-Owners Ins. Co. v. Ralph Gage Contracting, Inc.*, 2015 WL 11109791 (N.D. Fla. April 15, 2015) ......................................................................................41

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................33

*Blair v. Protective Nat'l Ins. Co.*, 1999 WL 97944 (E.D. Pa. Jan. 7, 1999) ...........32

*Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215 (M.D. Fla. 2015) ......18

*Chapman v. ACE Am. Ins. Co.*, 2018 WL 8459518 (M.D. Fla. June 21, 2018) ......19

*Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733 (Fla. 1998) ................................................................... 54, 55, 56, 57, 58, 61

*Core Constr. Servs. Se., Inc. v. Amerisure Co.*, 2012 WL 12904335 (M.D. Fla. Oct. 5, 2012) .........................................................................................32

*Diamond State Ins. Co. v. Fla. Dep't of Children & Families*, 2019 WL 5582252 (Fla. Dist. Ct. App. Oct. 30, 2019) ................................................................. 31, 34

*Esicorp, Inc. Liberty Mut. Ins. Co.*, 193 F.3d 966 (8th Cir. 1999) ..........................21

*Fla. Power & Light Co. v. Penn Am. Ins. Co.*, 654 So. 2d 276 (Fla. Dist. Ct. App. 1995.) ............................................................................. 57, 61

Lapin & Leichtling, LLP, 255 Alhambra Circle, Suite 600, coral gables, Florida 33134 (305) 569-4100

*Gallagher v. Dupont*, 918 So. 2d 342 (Fla. Dist. Ct. App. 2006)............................22

*Gottlieb & Gottlieb, P.A. v. Crants*, 657 Fed. App'x 920 (11th Cir. 2016) ............30

*Guarantee Ins. Co. v. Gulf Ins. Co.*, 628 F. Supp. 867 (S.D. Fla. 1986)................20

*Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.,* 420 F.3d 1317
(11th Cir. 2005)........................................................................................36

*Highland Holdings, Inc. v. Mid-Continent Cas. Co.*, 2016 WL 3447523
(M.D. Fla. June 23, 2016) ...........................................................................19

*Horn v. Liberty Ins. Underwriters, Inc.*, 391 F. Supp. 3d 1157 (S.D. Fla. 2019) ...19

*J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 Fed. App'x 918
(11th Cir. 2014).......................................................................................19

*Jones v. Fla. Ins. Guar. Ass'n Inc.*, 908 So. 2d 435 (Fla. 2005) ............................33

*Keller Indus., Inc. v. Employers Mut. Liab. Ins. Co. of Wisc.*, 429 So. 2d 779
(Fla. Dist. Ct. App. 1983) ...........................................................................19

*Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 450 F. Supp. 2d 1311
(M.D. Fla. 2006). ................................................................................ 23, 27

*Koala Miami Realty Holding Co., Inc. v. Valiant Ins. Co.*, 913 So. 2d 25
(Fla. Dist. Ct. App. 2005) ...........................................................................55

*Koikos v. Travelers Ins. Co.*, 849 So. 2d 263 (Fla. 2003).......................................35

*Lee v. Universal Underwriters Ins. Co.*, 642 Fed. App'x 969 (11th Cir. 2016)......33

*Liberty Mut. Ins. Co. v. Capeletti Bros., Inc.*, 699 So. 2d 736
(Fla. Dist. Ct. App. 1997) ...................................................................... 54, 62

*Lumber & Wood Prods., Inc. v. New Hampshire Ins. Co.*, 807 F.2d 916
(11th Cir. 1987)........................................................................................53

Lapin & Leichtling, LLP, 255 Alhambra Circle, Suite 600, coral gables, Florida 33134 (305) 569-4100

*Maddox v. Fla. Farm Bureau Gen.*, 129 So. 3d 1179 (Fla. Dist. Ct. App. 2014) ..36, 38

*Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293 (S.D. Fla. 2010), *aff'd* 477 F. App'x 702 (11th Cir. 2012) ............................................................... 35, 37

*Monticello Ins. Co. v. City of Miami Beach*, 2009 WL 667454 (S.D. Fla. Mar. 11, 2009) ............................................................................. 55, 59, 61

*New Hampshire Ins. Co. v. RLI Ins. Co.*, 807 So. 2d 171 (Fla. Dist. Ct. App. 2002) ............................................................................................................................36

*Nova Cas. Co. v. OneBeacon Am. Ins. Co.*, 603 Fed. App'x 898 (11th Cir. 2015) ..............................................................................................................23

*Ortho Passive Motion Inc. v. Allstate Ins. Co.*, 47 N.Y.S.3d 892 (N.Y. Dist. Ct. 2017) ............................................................................................................31

*Pa. Nat'l Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173 (11th Cir. 2015) ..............................................................................................................26

*Port Consol., Inc. v. Int'l Ins. Co. of Hanover, PLC*, 2019 WL 2009333 (S.D Fla. March 21, 2019) ...........................................................................................36

*Public Risk Mgmt. of Fla. v. One Beacon Ins. Co.*, 569 Fed. App'x 865 (11th Cir. 2014) ..............................................................................................................24

*Scottsdale Ins. Co. v. Pushing Daizies, Inc.*, 2017 WL 3706010 (M.D. Fla. Aug. 28, 2017) .............................................................................................32

*Sec. Ins. Co. v. Baad*, 657 So. 2d 10 (Fla. Dist. Ct. App. 1995) .............................41

*Shawnee Auto Service Center, Ltd. v. Continental Cas. Co.*, 782 F. Supp. 1503 (D. Kan. 1992) ...........................................................................................................20

*Sheldon v. United Servs. Auto. Ass'n*, 55 So. 3d 593 (Fla. Dist. Ct. App. 2010) ....31

Lapin & Leichtling, LLP, 255 Alhambra Circle, Suite 600, Coral Gables, Florida 33134 (305) 569-4100

St*. Paul Fire & Marine Ins. Co. v. Lexington Ins. Co.*, 2006 WL 1295408
(S.D. Fla. April 4, 2006) ........................................................................31

*St. Paul Mercury Ins. Co. v. Coucher*, 837 So. 2d 483 (Fla. Dist. Ct. App. 2002) .31

*State Nat'l Ins. Co. v. Lamberti*, 32 Fed. App'x 76 (11th Cir. 2010) .....................36

*Sun Microsys. of Cal., Inc. v. Eng'g & Mfg. Sys., C.A.*, 682 So. 2d 219
(Fla. Dist. Ct. App. 1996) ......................................................................21

*Tobin v. Michigan Mut. Ins. Co.*, 398 F.3d 1267 (11th Cir. 2005) .................. 17, 53

*Transam. Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303
(11th Cir. 2001) ....................................................................................29

*Trovillion Constr. & Dev. Inc. v. Mid-Continent Cas. Co.*, 2014 WL 201678
(M.D. Fla. Jan. 17, 2014) .......................................................................19

*U.S. Fire Ins. Co. v. Hayden Bonded Storage*, 930 So. 2d 686
(Fla. Dist. Ct. App. 2006) ......................................................................22

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 884 (Fla. 2007) ......................24

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 348 Fed. App'x 208
(9th Cir. 2009) ................................................................................ 32, 33

*Waste Corp. of Am. v. Genesis Ins. Co.*, 382 F. Supp. 2d 1349 (S.D. Fla. 2005) ...23

*Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc.*, 659 So. 2d 249 (Fla. 1995) ......22

*Zarrella v. Pacific Life Ins. Co.*, 498 Fed. App'x 945 (11th Cir. 2012) .................29

*Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 2020 WL 1884708
(M.D. Fla. Jan. 9, 2020) ........................................................................56

*Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 314 F. Supp. 3d 1284
(M.D. Fla. May 21, 2018) .................................................... 55, 59, 60, 61

## **Statutes**

28 U.S.C. §1291 ...........................................................................................43

28 U.S.C. §1332 ...........................................................................................43

## **Rules**

11th Cir. R. 26 .............................................................................................. i

Fed. R. App. P. 26.1 ...................................................................................... i

Fed. R. Civ. P. 8(c) ................................................................................. 31, 33

## **Treatises**

George J. Couch, Cyclopedia of Ins. Law, §65:13 (2d ed. 1983) ...........................41

<u>**ANSWER BRIEF OF APPELLEE**</u>

<u>**STATEMENT OF THE ISSUES**</u>

Whether Liberty Mutual Fire Insurance Company's ("Liberty") allocation of all settlement sums to one covered claim satisfied Florida law's requirement that an insured must allocate between covered and uncovered claims to recover from an insurer, such as State Farm Florida Insurance Company ("State Farm"), who wrongfully fails to defend its insured.

Whether the District Court correctly found the claim to which the settlement amounts were allocated was covered under the State Farm insurance policy.

Whether State Farm waived the affirmative defense of prior exhaustion of its insurance policy by failing to plead or offer evidence in support of the defense at summary judgment.

Whether the judgment exceeds policy limits.

Whether the District Court construed the State Farm insurance policy provisions or relied solely on a State Farm certificate of insurance to determine the scope of coverage afforded Liberty.

Whether State Farm's additional insured endorsement, prepared years *after* the loss, retroactively narrowed the coverage available to Liberty under the State Farm insurance policy.

1

## STATEMENT OF THE CASE

## I.    NATURE OF THE CASE

This appeal involves State Farm's duties to indemnify and defend Liberty, an additional insured under a Contractors Policy of insurance issued by State Farm to named insured Riteway Insurance Repair Service, Inc. ("Riteway"), against a lawsuit, alleging property damage from Riteway's negligent repair work (the "Underlying Lawsuit").

The District Court entered final judgment holding that State Farm is liable to Liberty for amounts Liberty paid to settle the Underlying Lawsuit, Liberty's defense fees and costs, prejudgment interest, and Liberty's fees in obtaining the judgment. (D.E. 189; D.E. 190; D.E. 191.) State Farm appeals the final judgment in Liberty's favor.

## II.    COURSE OF PROCEEDINGS

### A. THE UNDERLYING LAWSUIT AGAINST LIBERTY AND STATE FARM'S NAMED INSURED RITEWAY

On February 26, 2010, Regina Suarez and Jorge Sosa (the "Homeowners") filed the Underlying Lawsuit against Liberty, alleging damages to their home from negligent repairs by Riteway, asserting various claims against Liberty. (D.E. 36 ¶15; D.E. 37 ¶15; D.E. 77 at 3.) On April 10, 2010, the Homeowners filed an Amended Complaint, adding Riteway as a defendant, which alleged the Homeowners, pursuant to an insurance policy issued by Liberty, notified Liberty

their dining room floor was sagging. (D.E. 36, Ex. 4 ¶¶9-12.) The Homeowners alleged that Liberty directed Riteway to repair the property[1], and Riteway began demolition without properly securing the floor, causing the collapse of the first floor, which crushed the crawlspace, plumping pipes, and electrical conduits, thereby compromising the structure and causing severe damages to the home. (D.E. 36-4 ¶¶18, 29-30.) The Amended Complaint further alleged that Riteway damaged or lost the Homeowners' personal property, when it packed and stored the property. (D.E. 36-4 ¶¶31-32,62,65.) The Amended Complaint included counts against Liberty for breach of contract, breach of implied covenant of good faith and fair dealing, and negligence, and counts against Riteway for negligence, breach of third party contract, breach of contract, and breach of the implied covenant of good faith and fair dealing. (D.E. 36-4.) On October 18, 2012, the Homeowners filed a Second Amended Complaint, adding a count against Liberty for "Vicarious Liability for Gross Negligence and Fraud by Riteway." (D.E. 36 ¶19, Ex. 5; D.E. 37 ¶19.)

---

[1] State Farm's Initial Brief makes the following factual mischaracterizations, citing pages from Liberty's complaint that do not support the assertions: "Under the terms of the homeowner's policy, Liberty opted to perform the repairs itself rather than paying the claim. (DE 1 at 6.) Liberty effectively became the general contractor on the project, and then hired Riteway and other subcontractors – like plumbers and electricians – to assist in the repair. (DE 1 at 5-7.)" Liberty never alleged and disputes it opted to perform the repairs itself, acted as a general contractor, or hired subcontractors to assist in the repairs.

On May 1, 2013, the Homeowners filed a Third Amended Complaint, adding counts against Liberty for "Negligent Hiring, Supervision and Retention Violation of the Building Code Law" and "Fraudulent Inducement," and modifying the vicarious liability count against Liberty. (D.E. 36-6.) The Third Amended Complaint included a Count against Liberty labeled "Breach of the Contract to Repair," which alleged that Liberty created a contract to repair, directed Riteway to repair, Riteway was negligent in repairing, and as a result, the Homeowners suffered a complete loss of their home, which is uninhabitable and must be razed; the count also alleged damage to personal property. (D.E. 36-6 at 23-24; 19-22.)

On May 22, 2015, State Farm settled the Homeowners' claims against Riteway, and the count labeled vicarious liability against Liberty; State Farm informed Liberty, on June 26, 2015, that it would no longer defend Liberty, leaving Liberty to defend the Homeowners' remaining claims. (D.E. 45 ¶¶34, 35.) Liberty then settled all remaining claims against it, agreeing with the Homeowners to allocate the settlement payments solely to Count II, labeled "Breach of Contract to Repair." Liberty filed the underlying settlement agreement and other related documents with the District Court under seal. (D.E. 47, 48; D.E. 50.)

## B.  COURSE OF PROCEEDINGS IN THIS ACTION

Liberty filed this action on March 6, 2015 for breach of contract and declaratory relief, seeking damages for State Farm's failure to timely defend

Liberty, a declaration that State Farm's coverage was not limited by its additional insured endorsement prepared years after the loss, and a declaration that State Farm's coverage extended beyond the claims for vicarious liability. (D.E. 1.)

On September 1, 2015, following Liberty's settlement of the Underlying Lawsuit, Liberty filed its Amended Complaint, alleging State Farm breached the State Farm Contractors Policy by failing to timely defend, by failing to indemnify Liberty for fees and costs incurred before May 1, 2013, and by failing to indemnify Liberty for the amounts it paid to settle the Underlying Lawsuit. (D.E. 36.) Liberty also sought a declaration that coverage was not limited by State Farm's post-loss additional insured endorsement, but rather extended to claims involving Liberty's own conduct. *Id.*

State Farm answered Liberty's Amended Complaint on September 15, 2015, months after its May 22, 2015 settlement with the Homeowners. (D.E. 37; D.E. 45 ¶34.) Nowhere in State Farm's Answer did it allege payment under the Contractors Policy to settle claims against Riteway depleted its policy limits. (D.E. 37.)

On February 12, 2016, State Farm filed its motion for summary judgment, arguing its policies did not provide coverage for Liberty's own conduct, and that State Farm's additional insured endorsement, although prepared years after the loss, limited the coverage available to Liberty to vicarious liability claims.

5

(D.E. 44; 45.) Nowhere in State Farm's motion or supporting papers did it allege a prior payment under the policy depleted its policy limits. *Id.*

Liberty filed its cross-motion for summary judgment on February 12, 2016, seeking a declaration of coverage under the Contractors Policy for the amounts Liberty paid to settle the Underlying Lawsuit, that Count II for breach of the contract of repair was covered, that State Farm had a duty to defend Liberty from the time State Farm received notice of the Underlying Lawsuit, and had a duty to indemnify Liberty for defense fees and costs incurred before May 1, 2013. (D.E. 46.) State Farm filed its opposition on February 29, 2016; nowhere in its opposition did State Farm allege a prior payment under the policy depleted its policy limits. (D.E. 56.)

On September 12, 2016 State Farm and Liberty filed a "Joint Stipulation That There are No Facts to Be Tried to a Jury", stating:

> The parties have filed cross motions for summary-judgment because the issues in the case that require resolution are purely questions of law. If Defendant State Farm's motion for summary judgment is granted, final judgment will be entered for State Farm. If Plaintiff Liberty Mutual's motion for summary judgment is granted, there are certain damages amounts that will need to be determined; but the amounts are essentially already liquidated and the parties are in agreement that the amounts can be resolved by the parties or determined by the court if the parties cannot reach accord, whereupon a final money judgment can be entered in Plaintiff Liberty Mutual's favor.

(D.E. 75.)

On September 29, 2016, the Court entered an Omnibus Order granting and denying in part both motions, mistakenly stating there was no evidence Liberty was an additional insured under the Contractors Policy, but finding State Farm, pursuant to its Umbrella Policy, owed Liberty a duty to defend from October 18, 2012, when the Homeowners first asserted a claim against Liberty for vicarious liability. (D.E. 77.) Liberty moved for reconsideration, pointing to evidence that it was an additional insured under the Contractors Policy (D.E. 79). State Farm responded agreeing Liberty was an additional insured (D.E. 82). Consequently, the Court amended the Omnibus Order to reflect that Liberty was an additional insured, but it did not conduct a coverage analysis under the Contractors Policy based on the amended finding. (D.E. 88.)

Liberty appealed and State Farm cross-appealed, in the case styled *Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co.*, No. 18-11652. (D.E. 90; D.E. 99.) On May 1, 2019, this Court affirmed the portion of the judgment relating to State Farm's duty to defend but remanded for the District Court to conduct a coverage analysis under the Contractors Policy. (D.E. 115.)

On June 17, 2019, the District Court issued an order on remand granting Liberty's motion for partial summary judgment, finding that State Farm owed coverage under the Contractors Policy for sums Liberty was obligated to pay because of "property damage" under the policy, that the Contractors Policy applied

to property damage alleged in Count II of the Underlying Lawsuit, and State Farm was required to indemnify Liberty for the settlement sums. (D.E. 116 at 34-36.)

On July 1, 2019, State Farm filed an Amended Motion for Reconsideration of the ruling that State Farm is required to indemnify Liberty for the settlement sums, arguing it was premature for the District Court to decide Liberty's damages. (D.E. 129.) For the first time, more than four years after State Farm settled the claims against Riteway, State Farm also argued the Contractors Policy limits had been exhausted by settling the Homeowners' claims against Riteway. *Id.*

On July 19, 2019, the District Court granted reconsideration of the portion of its order requiring State Farm to indemnify Liberty for the amount of the settlement. (D.E. 138.) The Court issued an Amended Order on Remand Denying State Farm's motion for summary judgment, and granting Liberty's motion for partial summary judgment, finding Liberty was an additional insured under State Farm's Contractors Policy, State Farm had a duty to defend Liberty from June 28, 2011, and the Contractors Policy applied to the property damage alleged in Count II, such that Liberty was entitled to summary judgment that State Farm breached the Contractors Policy by failing to indemnify Liberty. (D.E. 139 at 37.) The Court ordered the parties to file either a joint proposed final judgment with an agreed upon monetary amount, or a joint status report reflecting the parties could not agree. (D.E. 139 at 40.)

On August 2, 2019, the parties filed a joint status report informing the Court that they could not agree on a monetary judgment. (D.E. 142.) On December 10, 2019, the District Court referred the case to the Magistrate Judge for an evidentiary hearing on damages. (D.E. 160.)

On January 22, 2020, the parties filed, under seal, a joint stipulation agreeing to: (a) the amounts Liberty paid to defend the Underlying Lawsuit from June 28, 2011 through October 17, 2012, and these amounts were reasonable; (b) the amounts Liberty paid to defend the Underlying Lawsuit from June 29, 2015 through its conclusion, and such amounts were reasonable; (c) the amounts State Farm paid to settle the claims in the Underlying Lawsuit against Riteway and the vicarious liability claim against Liberty; and (d) the amounts Liberty paid to settle the remaining claims against it in the Underlying Lawsuit and their allocation solely to Count II, labeled "Breach of Contract to Repair". (D.E. 177.) The stipulation states that State Farm does not contest the reasonableness of the amounts Liberty paid to settle the Underlying Lawsuit. (*Id.* ¶4.)

On January 23, 2020, the Magistrate Judge held an evidentiary hearing on damages, in which State Farm argued that it had exhausted the Contractors Policy limits, and the allocation in the settlement between Liberty and the Homeowners was not binding on State Farm. (D.E. 178-180.) Pursuant to a post-hearing order, the parties briefed these issues. (D.E. 181, 182.)

On April 9, 2020, the Magistrate Judge recommended the District Court award Liberty the stipulated amounts it paid to settle the Underlying Lawsuit, and its defense fees and costs plus prejudgment interest. (D.E. 183.) The Magistrate Judge found exhaustion of policy limits was an affirmative defense State Farm failed to plead, and therefore, waived, and State Farm's failure to defend Liberty in the Underlying Lawsuit bound it to the settlement and allocation. (D.E. 183 at 8-15.) State Farm objected to the report on April 23, 2020. (D.E.186.)

On July 14, 2020, the District Court issued a forty-three-page, sealed order, adopting and modifying the Magistrate Judge's sealed report and recommendations on the amount of Liberty's damages, citing to legal authorities beyond those briefed by the parties. The District Court held that State Farm failed to plead and prove, and therefore, waived, its exhaustion of policy limits argument, State Farm was bound by Liberty's settlement and allocation of the Underlying Lawsuit, because State Farm wrongfully refused to defend Liberty, and State Farm is liable to Liberty for the settlement sums, defense fees and costs, and prejudgment interest. (D.E. 189.) The District Court entered final judgment, pursuant to the July 14, 2020 order, which State Farm has appealed.[2] (D.E. 190, 191, 192.)

---

[2] Liberty cross-appealed the final judgment with respect to the District Court's construction of State Farm's umbrella policy, which cross-appeal will be moot if the final judgment is affirmed. (D.E. 198.)

## C. STATEMENT OF THE FACTS

Riteway was a home repair contractor within Liberty's Contractor Network Referral Program ("CNRP"). (D.E. 45-1.) Pursuant to its CNRP contract with Liberty, Riteway agreed to obtain liability insurance, naming Liberty as an additional insured for liability arising out of Riteway's work or operations. (D.E. 45-1 ¶6.3.) State Farm issued the Contractors Policy, with Riteway as named insured, and State Farm's agent issued a certificate of insurance, naming Liberty as an additional insured. (D.E. 36 ¶¶1, 10; D.E. 36-2; D.E. 37 ¶¶1, 10; D.E. 139 at 10.) The Contractors Policy does not distinguish between named and additional insureds with respect to the scope of coverage. (D.E. 36-1 at 30.)

In February 2010, the Homeowners brought the Underlying Lawsuit against Liberty, alleging property damage to their home caused by Riteway's faulty repair work. (D.E. 36 ¶15; D.E. 37 ¶15.) Despite Liberty tendering the Underlying Lawsuit to State Farm on June 28, 2011, State Farm, for almost three years, refused to defend Liberty, mistakenly contending that Liberty was not an additional insured. (D.E. 36 ¶¶17-23; D.E. 37 ¶¶17-23; D.E. 45 ¶¶9-12, 16, 20, 23-25.) State Farm persisted in its refusal, despite six letters sent by Liberty,[3] the fourth of which included the certificate of insurance, prepared by State Farm's own

---

[3] Liberty sent letters to State Farm demanding defense and indemnity on June 28, 2011, September 28, 2012, March 18, 2013, August 28, 2013, October 9, 2013, and on March 7, 2014. (D.E. 45 ¶¶9-10, 11-12; 16, 20, 23-24; 25, 30.)

agent, showing Liberty was an additional insured. (D.E. 45 ¶¶9-30.)   While State Farm contends Liberty only presented the certificate of insurance to State Farm on August 18, 2013[4], it was State Farm's own agent, Robert White, who prepared the certificate and signed it on January 27, 2009.  (D.E. 46-3 at pp.78-79).  According to State Farm, it incorrectly thought Liberty was not an additional insured, because of miscommunications between the State Farm agent who issued the policy and State Farm's underwriting department, as well as State Farm's failure to follow its own procedures. (Initial Br. at 16; D.E. 46-4 at 87.)

Also, in April 2014, State Farm finally acknowledged Liberty was an insured and agreed to defend under reservation, but would only pay fees incurred after May 1, 2013, when the Homeowners pleaded a count for vicarious liability against Liberty. (D.E. 45 ¶¶30-31.)

Also, in April 2014, more than four years after the Underlying Lawsuit was filed, State Farm prepared an Additional Insured Endorsement, contending the endorsement narrows Liberty's coverage to vicarious liability claims. (D.E. 45 ¶¶26-29.)  State Farm's witness testified, in December 2015, that within the last two years, State Farm had revised every single endorsement on all of its policies[5].

---

[4] Initial Br. at 15-16.

[5] State Farm's contention that the April 2014 Additional Insured Endorsement was "exactly the endorsement that would have been issued had the Certificate

(D.E. 46-4 at pp. 57-59). In May 2015, State Farm settled all claims against Riteway and the vicarious liability claim against Liberty, but left Liberty to defend the remaining claims. (D.E. 45 ¶34.) In November 2015, Liberty settled with the Homeowners, resolving all remaining claims, and allocating the settlement payment solely to Count II, labeled "Breach of Contract to Repair."[6] (D.E. 48; D.E. 177.)

## SUMMARY OF ARGUMENT

### I.  LIBERTY ALLOCATED THE SETTLEMENT SUMS TO A CLAIM COVERED UNDER STATE FARM'S CONTRACTORS POLICY, SATISFYING THE REQUIREMENTS OF FLORIDA LAW

Liberty's allocation of settlement payments to a single claim satisfied Florida law's requirement that an insured allocate between covered and uncovered claims to recover from an insurer, such as State Farm, who wrongfully fails to defend its insured. Liberty and the Homeowners indisputably allocated all settlement payments to Count II, which the District Court found was covered.

---

Insurance been transmitted to underwriting as of January 26, 2009" is materially undermined by this testimony. (Initial Br. at 18).

[6] State Farm tries to challenge the allocation to Count II of settlement payments to the Homeowners' counsel, by speculating: "[The Homeowners'] entitlement to attorney's fees was triggered solely under Count I for breach of the insurance contract by Liberty when a *post-suit* payment was made by Liberty…". (Initial Br. at 20.) State Farm's assertion is speculation, as the Underlying Lawsuit was settled, Liberty's liability under Count I was never determined, and the Homeowners pleaded claims for fees under Count II, as well as Count I.  Further, the Homeowners may have accepted the post-suit payment to settle Count I. (D.E. 173-1 at pp.68-69).

While Florida law requires an insured, who settles covered and uncovered claims, to allocate, there is no requirement to assign monetary amounts to uncovered claims, as State Farm incorrectly contends. The cases relied upon by State Farm involve an insured who entirely failed to allocate settlement proceeds to *any* claim, or who failed to use a special verdict form at trial, making it impossible to determine what portion of the settlement or judgment fell within coverage. The only case cited below which directly addresses whether an insured can properly allocate the entire settlement only to covered claims, concluded such an allocation permissible and enforceable against the insurer.

The District Court correctly found Count II in the Underlying Lawsuit, labeled "Breach of the Contract to Repair", was covered, as it alleged both "property damage" and an "occurrence". Count II alleged Liberty entered into a contract to repair, directed Riteway to do the work, and Riteway's negligent repairs caused severe damage to the property. In arguing liability policies do not cover breach of contract claims, State Farm relies upon inapposite cases, holding that Florida's public policy prohibits coverage of intentional misconduct by the insured, including *intentional* breaches of contract involving acts within the insured's control. Florida law allows for coverage of unintentional breaches of contract. Rather than an intentional breach, Count II alleges Liberty breached the contract to repair through the negligence of Riteway. The State Farm policy's exclusion,

14

addressing the insured's assumption of liability in a contract, is inapplicable under its plain language and cases construing the exclusion, which bar coverage only where the insured has assumed the liability of another in an indemnity agreement. The Underlying Lawsuit nowhere alleges that Liberty assumed the liability of another.

## II. LIBERTY DID NOT PAY ANY PORTION OF THE SETTLEMENT SUMS TO RESOLVE POTENTIAL LIABILITY UNDER COUNT I OF THE UNDERLYING LAWSUIT, AS STATE FARM ERRONEOUSLY CONTENDS

State Farm attempts to challenge the settlement agreement's allocation of the settlement sums to Count II of the Underlying Lawsuit, which allocation is binding on State Farm, by arguing a portion of the settlement proceeds resolved Liberty's liability for attorney's fees under Count I of the Underlying Lawsuit.  State Farm's contention is contradicted by the settlement agreement, the Court's finding of fact that the entire settlement was allocated to Count II, and the parties' stipulation that all settlement sums were both allocated to Count II and reasonable. State Farm's speculation that Liberty would have been liable under Count I is irrelevant.  In addition, State Farm failed to preserve this argument for appeal, by failing to raise it during the summary judgment briefing.

15

### III. THE DISTRICT COURT CORRECTLY FOUND STATE FARM WAIVED ITS DEFENSE OF EXHAUSTION BY PRIOR PAYMENT

The District Court correctly found that State Farm waived its exhaustion defense, both by failing to plead it, and by failing to offer any supporting evidence at summary judgment. State Farm desperately tries to circumvent its fatal omission by conflating the existence of policy limits, with the affirmative defense of exhausting those limits through *a prior payment under the policy*. Florida law provides exhaustion of policy limits is an affirmative defense that must be pleaded and proven. State Farm cannot cite to a single case suggesting otherwise.

### IV. THE JUDGMENT IS NOT IN EXCESS OF POLICY LIMITS, AS STATE FARM ERRONEOUSLY CONTENDS

The Underlying Lawsuit alleges multiple occurrences, the aggregate limit applies, and the judgment is within the State Farm policy's aggregate limit.

### V. THE DISTRICT COURT CORRECTLY APPLIED THE STATE FARM POLICY'S TERMS AND NEVER HELD THE CERTIFICATE OF INSURANCE CONSTITUED A SEPARATE GRANT OF COVERAGE

The District Court never held the certificate of insurance created a separate grant of coverage, as State Farm contends. Instead, it held, consistent with Florida law, the certificate of insurance granted Liberty additional insured status. The District Court correctly applied the policy's provisions to determine that Liberty is entitled to the same coverage as the named insured.

**VI.    THE DISTRICT COURT CORRECTLY HELD STATE FARM'S ADDITIONAL INSURED ENDORSEMENT, PREPARED YEARS AFTER THE LOSS, COULD NOT RETROACTIVELY LIMIT THE SCOPE OF COVERAGE AVAILABLE TO LIBERTY UNDER STATE FARM'S CONTRACTOR'S POLICY**

State Farm prepared its additional insured endorsement, which it contends retroactively narrows Liberty's coverage to vicarious liability claims, years after the losses alleged in the Underlying Lawsuit occurred. Under Florida law, to be effective, a modification to an insurance policy must precede the loss.

## ARGUMENT

**I.    LIBERTY'S RESPONSE TO STATE FARM'S "ARGUMENTS ON THE AMOUNTS OF RECOVERY ISSUES"**

**A.    LIBERTY ALLOCATED THE SETTLEMENT SUMS TO A CLAIM COVERED UNDER STATE FARM'S CONTRACTORS POLICY, SATISFYING THE REQUIREMENTS OF FLORIDA LAW**

1.    <u>Standard of Review</u>

The District Court's finding that Liberty and the Homeowners allocated the settlement sums to Count II in the Underlying Lawsuit[7] is reviewed under a clearly erroneous standard. *Tobin v. Mich. Mut. Ins. Co.*, 398 F.3d 1267, 1274 (11th Cir. 2005) (reviewing district court's findings of fact on summary judgment for "clear error"). Whether Count II is a covered claim under State Farm's Contractors Policy, and whether a settling insured must allocate a specific pecuniary amount to

---

[7] (D.E. 184 at 35, 36.)

each covered and non-covered claim to bind an insurer who wrongfully fails to defend, are questions of law reviewed de novo. *Tobin*, 398 F.3d at 1274.

> 2. <u>Liberty's Allocation of All Settlement Payments to a Single Covered Claim Satisfied Florida Law's Requirement that an Insured Allocate Between Covered and Non-Covered Claims to Recover from the Insurer</u>

The District Court found, and the parties stipulated, that Liberty and the Homeowners allocated Liberty's settlement payments to Count II of the Underlying Lawsuit, which the District Court found was covered under State Farm's Contractors Policy. (D.E. 189 at 36; D.E. 177 ¶4.) State Farm further stipulated that it did not contest the reasonableness of the settlement amounts. (D.E. 177 ¶4.)

Florida law requires an insured, who settles covered and uncovered claims, to allocate what it paid to settle the covered claims, but State Farm wrongly contends the insured must assign specific pecuniary amounts to the uncovered claims. State Farm cannot cite a single case that supports its position. The cases cited by State Farm involve an insured who either entirely failed to allocate settlement proceeds to *any* claim, or who failed to use a special verdict form at trial, such that it was impossible to determine what portion of the settlement or judgment fell within coverage. *Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1245 (M.D. Fla. 2015) (no allocation, whatsoever, in consent judgment and settlement agreement resolving covered and uncovered

claims); *Highland Holdings, Inc. v. Mid-Continent Cas. Co.*, 2016 WL 3447523, at *2-4 (M.D. Fla. June 23, 2016) (no allocation, whatsoever, of lump sum in settlement agreement resolving more than covered claims); *Trovillion Constr. & Dev. Inc. v. Mid-Continent Cas. Co.*, 2014 WL 201678, at *8 (M.D. Fla. Jan. 17, 2014) ("settlement agreement and consent judgment are completely unallocated"); *Horn v. Liberty Ins. Underwriters, Inc.*, 391 F. Supp. 3d 1157, 1166 (S.D. Fla. 2019) ("Plaintiffs here nonetheless proceeded with an unallocated settlement to their peril"); *J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 Fed. App'x 918, 928 (11th Cir. 2014) (no record evidence to suggest any portion of the settlement was for a covered claim); *Chapman v. ACE Am. Ins. Co.*, 2018 WL 8459518, at *10 (M.D. Fla. June 21, 2018) ("Neither the Agreement nor the Consent Judgment allocate the damages between the claims; therefore the Court cannot discern the amount attributed between covered and non-covered claims"); *Keller Indus., Inc. v. Employers Mut. Liab. Ins. Co. of Wisc.*, 429 So. 2d 779 (Fla. Dist. Ct. App. 1983) (insured failed to apportion damages in settlement); *Am. Cas. Co. of Reading Pa. v. Health Care Indem., Inc.*, 613 F. Supp. 2d 1310, 1320-21 (M.D. Fla. 2009) (general jury verdict against speech pathologist insured by two different carriers provided no information about what portion of judgment should be allocated to particular carrier); *Guarantee Ins. Co. v. Gulf Ins. Co.*, 628 F. Supp. 867, 870 (S.D.

Fla. 1986) (general verdict provided no evidence of what portion of judgment, if any, insurer was liable).

The only case cited below[8], that directly addresses whether an insured who settles covered and non-covered claims can properly allocate the entire settlement to covered claims[9], concluded such an allocation was permissible and enforceable against the insurer. In *Shawnee Auto Service Center, Ltd. v. Continental Cas. Co.*, 782 F. Supp. 1503 (D. Kan. 1992), the insured entered into a settlement agreement that allocated the entire payment to negligence claims, while resolving other claims concededly outside of coverage. *Id.* at 1504-05. The Court held the settlement agreement itself satisfied the insured's burden to show the settlement payment arose out of a covered wrongful act. *Id.* at 1506.

State Farm fails to meaningfully distinguish *Shawnee*. State Farm is correct that *Shawnee* applies Missouri law rather than Florida law, but State Farm cannot accurately point to any material difference between Florida and Missouri law on the extent to which an insurer, who wrongfully fails to defend, is bound by the insured's settlement allocation. State Farm asserts Missouri law favors settlements, and so does Florida law. *Sun Microsys. of Cal., Inc. v. Eng'g & Mfg. Sys., C.A.*,

---

[8] The case was cited by the District Court. (D.E. 189 at 38-40.)

[9] Counsel has exhaustively researched the issue and has not found any other case directly on point.

682 So. 2d 219 (Fla. Dist. Ct. App. 1996) ("The public policy of the State of Florida, as articulated in numerous court decisions, highly favors settlement agreements among parties and will seek to enforce them whenever possible"). Both Florida law and Missouri law require a settlement, encompassing covered and non-covered claims, to be allocated to bind the insurer. *Esicorp, Inc. Liberty Mut. Ins. Co.*, 193 F.3d 966, 971 (8th Cir. 1999) (applying Missouri law and stating "a settlement encompassing both covered and noncovered claims must be fairly apportioned between the two"). Moreover, both Missouri and Florida law allow an insurer, who wrongfully fails to defend, to challenge the settlement if unreasonable or negotiated in bad faith. *See e.g. Ahern v. Odyssey Re (London) Ltd.*, 788 So. 2d 369, 372 (Fla. Dist. Ct. App. 2001); *Esicorp.*, at 970; *Auto-Owners Ins. Co. v. Ennulat*, 231 S.W. 3d 297 (Mo. App. Ct. 2007).

Neither State Farm here, nor the insurer in *Shawnee*, presented any evidence that the settlement was unreasonable or made in bad faith. Both wrongfully failed to defend their insureds. Liberty's allocation of all settlement sums to Count II means it allocated zero dollars to the remaining claims. Consequently, whether the remaining claims might have fallen outside coverage is irrelevant.

There also is no merit to State Farm's contention that the allocation is not binding, because Liberty "unilaterally" assigned the proceeds to "what it believed to be a covered claim". The allocation was "unilateral" precisely because State

Farm wrongfully failed to defend Liberty. State Farm's absence from the settlement negotiations was of its own making, and it cannot now cry foul that the allocation was "unilateral". Under Florida law, an insurer who wrongfully fails to defend its insured does so at its own peril, and is bound by the settlement, unless the insurer can show there is no coverage for the settled claims, or the settlement was unreasonable or made in bad faith. *U.S. Fire Ins. Co. v. Hayden Bonded Storage*, 930 So. 2d 686, 690-91 (Fla. Dist. Ct. App. 2006). State Farm presented no evidence the settlement was either unreasonable, or made in bad faith.

State Farm's reliance upon *Wells v. Tallahassee Memorial Regional Medical Center, Inc.*, 659 So. 2d 249, 254 (Fla. 1995), for the proposition that Florida law prohibits an allocation that would disadvantage the insurer is misplaced. (Initial Br. at 36-37.) *Wells* does not involve an insurer who wrongfully failed to defend, and therefore, has no application here. Instead, *Wells* involves the enforceability, against a non-settling joint tortfeasor, of the apportionment of economic versus non-economic damages paid by the settling joint tortfeasor. While ordinarily one who is not a party to a settlement agreement cannot be bound by its terms, an exception applies where an insurer wrongfully refuses to defend its insured; in that case, the insurer is bound by the settlement. *Gallagher v. Dupont*, 918 So. 2d 342, 348 (Fla. Dist. Ct. App. 2006) ("Ordinarily, one who is not a party to a settlement agreement cannot be bound by its terms, but an exception applies where an insurer

wrongfully refuses to defend its insured"); *Nova Cas. Co. v. OneBeacon Am. Ins. Co.*, 603 Fed. App'x 898, 903-04 (11th Cir. 2015) (insurer who wrongfully failed to defend based on erroneous belief there was no coverage bound by settlement).

Here, State Farm wrongfully failed to defend, stipulated the settlement was reasonable, and offered no evidence of bad faith. Liberty's allocation of all payments to Count II satisfied Florida law's requirement that the party seeking recovery allocate between covered and uncovered claims. Consequently, State Farm is bound by the settlement and its allocation.

      3.     <u>The District Court Correctly Found Count II in the Underlying Lawsuit Was Covered under State Farm's Contractors Policy</u>

State Farm misstates Florida law to argue Count II of the Underlying Lawsuit, labeled "Breach of Contract to Repair", cannot be covered, because liability policies cannot provide coverage for breach of contract claims. State Farm cites two cases for its incorrect contention: *Waste Corporation of America v. Genesis Insurance Company*, 382 F. Supp. 2d 1349 (S.D. Fla. 2005) and *Key Custom Homes, Inc. v. Mid-Continent Casualty Company*, 450 F. Supp. 2d 1311 (M.D. Fla. 2006). (Initial Br. at 28.) Neither *Waste Corp.* nor *Key Custom* support State Farm's contention. Instead, *Waste Corp.* recognizes that Florida's public policy prohibits coverage of intentional misconduct by the insured, including an *intentional* breach of contract, involving acts within the insured's control, which "places the insured in the unique posture of voluntarily choosing to do some act for

which he knows an insurance company will compensate him even if he chooses wrongly." *Waste Corp.*, 382 F. Supp. 2d at 1354-55.

Count II in the Underlying Lawsuit does not allege an intentional breach of contract by Liberty, nor does it involve acts or omissions exclusively within Liberty's control. Rather, Count II alleges Liberty entered into a contract to repair the Plaintiffs' home, and directed State Farm's named insured, Riteway, to repair the property. (D.E. 36-6 ¶¶109, 111.) Count II further alleges Riteway's work, including the improper removal of structural floor joists and poor construction methods, "compromised the structure and caus[ed] severe damage to Plaintiffs' home", resulting in a total loss of the home, which "must be razed to comply with [the] building code". (Third Am. Compl. ¶¶54-59, 68-69; 97.) Liberty's liability under Count II, though labeled a contract claim, does not arise out of an intentional breach of contract by Liberty, but rather out of Riteway's negligence in unsuccessfully attempting to repair.

Florida law allows for the insuring of breaches of contract that are not intentional. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 884 (Fla. 2007)(holding breach of contract claim arising out of subcontractor's defective work is a covered occurrence under CGL policy, where policy did not exclude coverage for breach of contract claims); *Public Risk Mgmt. of Fla. v. One Beacon Ins. Co.*, 569 Fed. App'x 865, 870 (11th Cir. 2014) (applying Florida law and

finding coverage for breach of contract claims and stating: "Nothing in the City's policy suggests that a wrongful act cannot be rooted in a duty the City has under a contract. To the contrary, the fact that Paragraph (l) in Section IV's exclusions eliminates coverage for 'loss arising out of an intentional breach of contract' establishes that unintentional breaches of contract can be covered"). Like the policies in *U.S. Fire Ins. Co.* and *Public Risk Management*, State Farm's Contractors Policy's insuring clause has no language limiting coverage to tort claims. Instead, the Contractors Policy provides:

> Coverage L – Business Liability
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies.

(D.E. 36-1 at 30.)

State Farm also erroneously suggests an exclusion in the Contractors Policy for "property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement", which State Farm never argued below, might bar Liberty's claim. (Initial Br. at 28.) The exclusion does not apply, because there is no allegation or evidence that Liberty *assumed* the liability of another through a contract or agreement; instead, the Homeowners alleged Liberty "opted to repair the home and entered a new contract with Plaintiffs promising to repair the Plaintiff's home". (D.E. 36-6 ¶109.) This very exclusion

was construed by the Eleventh Circuit and at least one Florida District Court to bar only claims based on the assumption of liability in an indemnity agreement. *Pa. Nat'l Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173, 1181-82 (11th Cir. 2015) (finding breach of implied warranty claim not barred by exclusion for "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement", which by its plain language only bars coverage for claims based on an assumption of liability in an indemnity agreement); *Amerisure Ins. Co. v. Auchter Co.*, 2017 WL 4862194 (M.D. Fla. Sept. 27, 2017) (same).

In addition, the exclusion referenced by State Farm contradicts its argument that breach of contract claims cannot be covered under the Contractors Policy. State Farm fails to quote the exclusion in its entirety, which provides certain breach of contract claims, even if based on an assumption of liability, <u>are, nonetheless, covered</u>. The exclusion provides:

> Under Coverage L, this insurance does not apply:
>
> 2. to bodily injury or property damage for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement.
>
> This exclusion does not apply to liability for damages:
>
> > a. assumed in a contract or agreement that is an insured contract; or
> >
> > b. that the insured would have in the absence of a contract or agreement.

(D.E. 36-1 at 31.)

The Contractors Policy includes, under the definition of an "insured contract", six different types of contracts, including:

> (6) that part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages.

(D.E. 36-1 at 31.)

If the State Farm Contractors Policy did not cover *any* breach of contract claims, as State Farm contends, it would not have an exclusion for certain types of breach of contract claims, or any exceptions to the exclusion.

State Farm's reliance on *Key Custom* is also misplaced. In *Key Custom*, a home builder sought coverage for sums it was contractually obligated to pay third parties, independent of any property damage. The *Key Custom* court held the claims were not covered, not because they were breach of contract claims, but rather because they were not seeking damages because of "property damage" within the meaning of the policy. The *Key Custom* court stated:

> Thus, it is clear that Key Custom's obligations did not arise from the damage to the Groveland Project, but rather from Key Custom's regular business dealings and contract negotiations. The fact that Key Custom lost the asset upon which it was relying to make these payments is insufficient to fairly bring Key Customs' claim within the CGL Policy's definition of "property damage."

27

*Key Custom*, 450 F. Supp. 2d at 1318-19. Unlike the claims in *Key Custom*, the allegations of Count II plainly involve "property damage", as the Homeowners allege Riteway's negligent repairs severely damaged the home.

### B. LIBERTY DID NOT PAY ANY PORTION OF THE SETTLEMENT SUMS TO RESOLVE POTENTIAL LIABILITY UNDER COUNT I OF THE UNDERLYING LAWSUIT, AS STATE FARM ERRONEOUSLY CONTENDS

State Farm seeks to challenge the settlement agreement's allocation of the settlement sums to Count II of the Underlying Lawsuit, by arguing that, notwithstanding the allocation, which is binding on State Farm, as discussed at length *supra*, a substantial portion of the settlement proceeds were paid to settle Liberty's liability for attorney's fees for breach of the insurance policy under Count I of the Underlying Lawsuit. (Initial Br. at 29-30.) State Farm's contention is contradicted by the settlement agreement, the Court's finding of fact that the entire amount of the settlement was allocated to Count II, and the parties' stipulation that the entire amount of the settlement was both allocated to Count II and reasonable. (D.E. 48-1; D.E. 177 ¶4; D.E. 189 at 35, 36, 40.) State Farm's speculation that Liberty would have been liable under Count I because of a post-suit payment is irrelevant, as the Homeowners may have accepted the post-suit payment to settle Count I, Liberty's liability under Count I was never determined, and the Homeowners pled clams for fees under Count I and Count II. (D.E. 173-1 at 68-69).

In addition, State Farm failed to preserve for appeal its argument that, notwithstanding the allocation of all settlement sums to Count II, a substantial sum was paid to resolve a fee claim under Count I for Liberty's alleged breach of its insurance contract, which State Farm claims is not covered. (Initial Br. at 29-30.) State Farm never made this argument in opposition to Liberty's motion for partial summary judgment, in State Farm's own motion for summary judgment, or in State Farm's motion for reconsideration of the order granting Liberty's motion for partial summary judgment, which order found the settlement amounts were allocated solely to Count II[10]. (D.E. 44; D.E. 56; D.E. 116 at 35; D.E. 129.) State Farm, therefore, waived this argument and failed to preserve it for appeal. *Transam. Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001) (insurer's failure to raise insured's failure to disclose material facts in response to insured's motion for summary judgment waived argument that failure to disclose material facts voided policy); *Zarrella v. Pacific Life Ins. Co.*, 498 Fed. App'x 945, 951 n.5 (11th Cir. 2012) (neither new legal theory, nor factual assertion party contends supported theory, would be considered on appeal where

---

[10] Although State Farm cites summary judgment papers in support of its proposition that the Homeowners' entitlement to fees was triggered solely under Count I due to a post-suit payment by Liberty, the summary judgment papers nowhere reference the post-suit payment.  (Initial Br. at 20, citing D.E. 57-58, 64, 69).  The only record evidence cited by State Farm that references the payment is the deposition of Riteway's counsel, which was taken after summary judgment. (D.E. 173-3).

not presented to District Court in responding to opposing party's motion for summary judgment).

### C. THE DISTRICT COURT CORRECTLY FOUND STATE FARM WAIVED ITS DEFENSE OF EXHAUSTION BY PRIOR PAYMENT

####   1.   Finding of Waiver Reviewed for Abuse of Discretion

The District Court's finding, that State Farm waived its exhaustion defense, is reviewed for abuse of discretion. *Gottlieb & Gottlieb, P.A. v. Crants*, 657 Fed. App'x 920, 922-23 (11th Cir. 2016) (reviewing District Court's finding that defense was waived for abuse of discretion).

####   2.   The District Court Correctly Found State Farm Waived Exhaustion by Prior Payment as a Defense

State Farm desperately tries to conflate the tautology, that recovery is subject to policy limits, with the affirmative defense that the insurer exhausted those limits through *a prior payment under the policy*. (Initial Br. at 38-43.) As the District Court noted, asserting that policy limits apply does not equate to asserting policy limits have already been exhausted by prior payments of the insurer. (D.E. 189 at 29.) While State Farm pleaded policy limits, it never pleaded or alleged in its answer, nor offered any evidence at the summary judgment stage, that it made a prior payment under the policy that depleted those limits. (D.E. 37; D.E. 44; D.E. 45; D.E. 56; D.E. 57.) Every insurance policy has limits that apply, regardless of whether the insurer made a prior payment. But exhaustion of limits, through a prior payment, requires proof of facts extrinsic to the insurance contract

and is, therefore, an affirmative defense that must be pleaded and proven. *St. Paul Mercury Ins. Co. v. Coucher*, 837 So. 2d 483, 487 (Fla. Dist. Ct. App. 2002) (application of "other insurance" clause required facts extrinsic to insurance contract to determine its application, and was, therefore, an affirmative defense the insurer waived by failing to plead). *See also* Fed. R. Civ. P. 8(c), enumerating "payment" as an affirmative defense.

Florida law, like the law of other jurisdictions, reflects exhaustion of policy limits is an affirmative defense to claims for insurance coverage; State Farm cannot cite a single case suggesting otherwise. *Diamond State Ins. Co. v. Fla. Dep't of Children & Families*, 2019 WL 5582252, at *2 (Fla. Dist. Ct. App. Oct. 30, 2019) ("The dispute on appeal concerns the insurer's affirmative defense that, because it exhausted the $3,000,000 aggregate policy limit for claims made or reported during the effective dates of the policy, it was excused from defending a subsequent suit against DCF"); St*. Paul Fire & Marine Ins. Co. v. Lexington Ins. Co.*, 2006 WL 1295408, at *3 (S.D. Fla. April 4, 2006) (exhaustion of policy limits is an affirmative defense); *Sheldon v. United Servs. Auto. Ass'n*, 55 So. 3d 593, 594-95 (Fla. Dist. Ct. App. 2010) (insurer's affirmative defenses included exhaustion of benefits under policy); *Ortho Passive Motion Inc. v. Allstate Ins. Co.*, 47 N.Y.S.3d 892, 894 (N.Y. Dist. Ct. 2017) ("Showing that the policy limits have been exhausted is not a requisite part of a plaintiff's case; it is the defendant's

burden to plead and then prove this affirmative defense"); *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 348 Fed. App'x 208, 210 (9th Cir. 2009) ("Lumbermens next argues that the limit of its excess policy was exhausted by payments on the earlier Martinez claim. We hold that this argument is waived because it was inadequately pled as an affirmative defense in the district court"); *Blair v. Protective Nat'l Ins. Co.*, 1999 WL 97944 (E.D. Pa. Jan. 7, 1999) (granting insurer leave to amend to assert exhaustion of policy limits as an affirmative defense).

The two cases State Farm cites for its proposition, that its reference to policy limits sufficiently pleads a defense that State Farm had fully previously paid the limits of the Contractors Policy, don't remotely support the proposition. (Initial Br. at 39-40.) Neither *Core Constr. Servs. Se., Inc. v. Amerisure Co.*, 2012 WL 12904335, at *3 (M.D. Fla. Oct. 5, 2012), nor *Scottsdale Ins. Co. v. Pushing Daizies, Inc.*, 2017 WL 3706010, at *4 (M.D. Fla. Aug. 28, 2017), involve the defense of prior exhaustion or prior payment by the insurer. In both cases, the court denied a motion to strike the insurers' defenses that referenced policy provisions and exclusions directly related to the allegations of the complaint, noting the plaintiff would not be prejudiced by having the defenses resolved at summary judgment or trial. Here, State Farm's prior settlement payment is a fact indisputably outside the allegations of the complaint, which State Farm neither

pleaded in its answer nor raised at summary judgment. Whether or not the heightened pleading standards in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), apply, State Farm failed to plead or prove the defense, and, consequently waived it. Fed. R. Civ. P. 8(c)(1); *Lee v. Universal Underwriters Ins. Co.*, 642 Fed. App'x 969, 973-74 (11th Cir. 2016) (insurer waived affirmative defense by failing to raise it in answer); *Jones v. Fla. Ins. Guar. Ass'n Inc.*, 908 So. 2d 435, 452 (Fla. 2005) (insurer's failure to plead affirmative defense constituted waiver of defense).

State Farm's attempts to distinguish the cases relied on by the District Court are unavailing. The Court in *U-Haul* specifically held that exhaustion of policy limits was an affirmative defense that was waived when inadequately pleaded. State Farm's only response is there is no evidence the insurer in *U-Haul* pleaded policy limits as did State Farm. (Initial Br. at 41.) But a policy's limits, in a coverage action, apply regardless of whether or not they were pled. The prior payment under the policy that depletes the limits is the affirmative defense. State Farm attempts to distinguish *Ortho Passive* by arguing that, because the insurer pleaded, but failed to prove at trial, the affirmative defense of exhaustion, the court's holding that exhaustion is an affirmative defense is *dicta*. State Farm's argument utterly lacks merit. An affirmative defense, by definition, is one for which the defendant carries the burden of proof. The fact that the insurer failed to

33

prove exhaustion squarely supports the District Court's holding that exhaustion is an affirmative defense.

State Farm also cannot persuasively distinguish the Florida appellate court's decision in *Diamond State*. State Farm contends *Diamond State* did not hold exhaustion is an affirmative defense, and the insurer just "happened to have asserted exhaustion" as an affirmative defense. (Initial Br. at 42.) But State Farm's characterization is inaccurate. The Court, in *Diamond State,* in reversing summary judgment because of a genuine issue of material fact with respect to exhaustion, found exhaustion was a defense to coverage and the insurer's duty to defend, which involved facts beyond the pleadings. *Diamond State,* 2019 WL 5582252, at *2. A defense that depends upon facts outside the complaint is, by definition, an affirmative defense. Specifically, the *Diamond State* Court stated:

> Because the existence and exhaustion of policy limits is not a matter normally addressed in a complaint, it would be impossible to enforce the bargain reached by the parties if the court refused to look beyond the pleadings. For this reason, a case like this one presents a narrow exception to the general rule that the duty to defend is determined by looking only at the pleadings. In order to resolve a duty to defend dispute which turns on whether the policy limits were exhausted, courts must look to the actual facts behind the pleadings.

*Id.* State Farm's failure to plead or raise exhaustion at summary judgment is fatal.

## D. THE JUDGMENT IS NOT IN EXCESS OF POLICY LIMITS, AS STATE FARM ERRONEOUSLY CONTENDS

Because the Underlying Lawsuit involved damages caused by multiple occurrences[11], and the settlement amount, excluding Liberty's attorneys' fees and prejudgment interest[12], is within the State Farm Contractors Policy's General Aggregate Limit and Product-Completed Operations Aggregate Limit, the judgment does not exceed policy limits, as State Farm incorrectly contends.

Florida law applies the "cause theory" to determine the number of "occurrences"; it is the immediate cause of the damage, neither expected from the standpoint of the insured, rather than the underlying tort or legal theory, that is the "occurrence". *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 269 (Fla. 2003) (two nearly concurrent shootings in negligent failure to provide security lawsuit were separate "occurrences" under CGL policy). The critical inquiry is whether the damages resulted from separate forces, "distinguishable in time and space". *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1346-47 (S.D. Fla. 2010), *aff'd* 477 F. App'x 702 (11th Cir. 2012). Where, as here, distinct immediate

---

[11] Although raised by Liberty below, the District Court did not decide whether the Underlying Lawsuit involved damages caused by multiple "occurrences" because it found State Farm waived prior exhaustion, and State Farm did not argue below, as it does on appeal, that the amount of the settlement exceeded policy limits. (D.E. 189 at 23 n.9.)

[12] These amounts are covered by the Supplementary Payments portion of the Contractors Policy, and do not erode the Policy's limits. (D.E. 1-3 at 30.)

causes led to the damage, Florida courts have uniformly found separate "occurrences". *Port Consol., Inc. v. Int'l Ins. Co. of Hanover, PLC*, 2019 WL 2009333 (S.D Fla. March 21, 2019) (where truck drivers exploited error in pumping system to steal fuel, each theft, an independent immediate act causing damage, was a separate "occurrence"); *Maddox v. Fla. Farm Bureau Gen.*, 129 So. 3d 1179 (Fla. Dist. Ct. App. 2014) (dog bites on insured's girlfriend and her child were separate "occurrences"); *State Nat'l Ins. Co. v. Lamberti*, 32 Fed. App'x 76 (11th Cir. 2010) (claims against sheriff's office by protestors during mass arrests were separate "occurrences", as cause of injuries were separate interaction with officers, distinguishable in time and space); *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.,* 420 F.3d 1317 (11th Cir. 2005) (in negligence claim arising out of third party's crimes, all of which occurred the same day, each crime was a separate "occurrence"); *New Hampshire Ins. Co. v. RLI Ins. Co.*, 807 So. 2d 171 (Fla. Dist. Ct. App. 2002) (three gunshots injuring three people were three "occurrences", as separate acts, rather than one proximate, uninterrupted act, caused the injuries).

In the construction defect context, an insured contractor's deficient tarping work, deficient roof repairs, and deficient work on the mansards, all of which caused water intrusion and were performed under a single contract, are separate "occurrences". *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293 (S.D. Fla.

2010). The *Basdeo* court rejected the argument that the cause of damages was the contractor's breach of contract, concluding each category of damages "resulted from a separate force, distinguishable in time and space", and that "separate forces inflicting the damages determine the number of occurrences." *Basdeo*, 742 F. Supp. at 1347-48.

In this case, the claims settled by Liberty involved multiple categories of damages, with multiple immediate causes of damage, each distinguishable in time and space. The Underlying Lawsuit involves at least four "occurrences", including:

- On June 20, 2009, as Riteway was actively and unnecessarily removing floor joists… an enormous crash was heard and the remaining tile and sub floor of the dining room literally fell down onto the crawlspace, crushing parts of the crawlspace, crushing plumbing pipes, crushing electrical conduits, compromising the structure and causing severe damages to Plaintiffs' home; several plumbing pipes and other building parts were damaged by Riteway's use of an electric jackhammer to chip the tile floor of the dining room; Riteway's poor construction methods also damaged the mirror in the dining room, the Mexican tile floor, the plumbing and electrical conduits. (D.E. 36-6 ¶¶ 55-57.)

- Between June 20, 2009 and June 28, 2009, Riteway removed the floor, subfloor, and the joists from the dining room, and removed the kitchen floor, kitchen cabinets, and kitchen joists. Riteway unnecessarily removed and discarded the Plaintiffs' kitchen cabinets. Riteway also removed the plumbing and electrical from inside the crawlspace from the kitchen, dining, and foyer areas including the connections to the second-floor bathrooms. (D.E. 36-6 ¶¶ 41-43; 59.)

- Between July 6, 2009 and July 17, 2009, Riteway packed up and moved various of Plaintiffs' belongings; Riteway lost

37

several of the boxes containing Plaintiffs' belongings. (D.E. 36-6 ¶¶ 60-61; 85.)

- Between July 17, 2009 and July 21, 2009, in further violation of the Florida Building Code and Miami Beach permit, Riteway removed the joists in the kitchen, the floor, sub-floor and joists from the foyer, ½ bath and closet, the stair landing, and removed and severely cut plumbing and electrical fixtures from the entire first floor structure. Between July 17, 2009 and July 21, 2009, Riteway destroyed all the joists, and all evidence of the condition of the joists under the foyer, ½ bath, closet, and stair landing. (D.E. 36-6 ¶¶ 68-69.)

Even assuming, *arguendo,* the claims might reasonably be construed as involving *either* a single "occurrence" or multiple "occurrences", which it should not, any ambiguity regarding the meaning of "occurrence", which there is none, should be construed against State Farm, the insurer, and in favor of Liberty, the insured. *Maddox*, 129 So. 3d 1179 (reasonable to construe "occurrence" as either the entire dog attack or each separate dog bite, but ambiguity would be construed against insurer, so as to constitute multiple "occurrences").

## II. LIBERTY'S RESPONSE TO STATE FARM'S "ARGUMENTS ON THE SCOPE OF COVERAGE ISSUES"

### A. THE DISTRICT COURT CORRECTLY APPLIED THE STATE FARM POLICY'S TERMS AND NEVER HELD THE CERTIFICATE OF INSURANCE CONSTITUTED A SEPARATE GRANT OF COVERAGE

The District Court never held, nor did Liberty argue, the certificate of insurance created a separate grant of coverage, as State Farm incorrectly states. (Initial Br. at 45-46.) Instead, the District Court found, consistent with Florida law, that the certificate of insurance granted Liberty additional insured status under the

38

Contractors Policy, regardless of whether there was further documentation of Liberty's status in the policy. (D.E. 139 at 24.) The District Court further held the language of the Contractors Policy determined the scope of coverage afforded to Liberty. (D.E. 139 at 24, 29,[13] 33.) State Farm says that it agrees the language of the policy dictates the scope of coverage, but then argues an additional insured endorsement it prepared, *more than five years after the damages alleged in the Underlying Lawsuit*, dictates the scope of coverage for the loss that occurred years earlier. (Initial Br. at 47-51.)

The District Court, in analyzing the Contractors Policy to determine the scope of coverage afforded Liberty, relied on the insuring provisions of the policy, which provide:

> **Business Liability**
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, or advertising injury, to which this insurance applies….

(D.E. 139 at 31.)

The District Court noted the Contractors Policy's insuring provisions did not differentiate between named and additional insureds with respect to coverage, as

---

[13] The District Court states in its summary judgment order: "To determine the scope of coverage afforded Liberty Mutual, the Court must look to the Contractors Policy." (D.E. 139 at 29.)

"the insured" encompasses both.  Absent any language delineating different coverage for a named insured versus an additional insured, Liberty is entitled to the same coverage as the named insured Riteway under the State Farm Contractors Policy. *Id.* State Farm cannot cite a single case suggesting the District Court's analysis is incorrect.

With respect to State Farm's duty to defend Liberty, the District Court cited the following language from the State Farm Contractors Policy:

> **Right and Duty to Defend**
>
> We will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent….

(D.E. 139 at 31.)

Because the Underlying Lawsuit, from the time of the Amended Complaint going forward, alleged Liberty's negligence in repairing the home caused damages to the home, it alleged property damage which fairly and potentially brought the lawsuit within coverage under the State Farm Contractors Policy. (D.E. 139 at 34.) State Farm does not contest these conclusions, but instead, distorts the District Court's analysis, contending that the Court held that the certificate of insurance constituted a separate grant of coverage. Instead, the District Court correctly construed the language of the Contractors Policy to find that State Farm had a duty to defend Liberty from the time of the Amended Complaint in the Underlying

Lawsuit, and had a duty to indemnify Liberty with respect to the count for breach of the contract to repair, which sought to hold Liberty liable for property damage within the meaning of the State Farm Contractors Policy.

**B. THE DISTRICT COURT CORRECTLY HELD STATE FARM'S ADDITIONAL INSURED ENDORSEMENT, PREPARED YEARS AFTER THE LOSS, COULD NOT RETROACTIVELY LIMIT THE SCOPE OF COVERAGE AVAILABLE TO LIBERTY UNDER STATE FARM'S CONTRACTOR'S POLICY**

State Farm argues its additional insured endorsement, prepared years after the loss, and after State Farm had revised the language of all of its endorsements[14], retroactively limits the coverage available to Liberty under the State Farm Contractors Policy to vicariously liability. (Initial Br. at 47-51.) In so arguing, State Farm cannot meaningfully distinguish the District Court's cases, holding, under Florida law, that, to be effective, an alteration or modification to an insurance policy must precede the loss. *Sec. Ins. Co. v. Baad*, 657 So. 2d 10 (Fla. Dist. Ct. App. 1995) (endorsement excluding dog bites was invalid, as a matter of law, where injury occurred before the endorsement was accepted by the insured); *Auto-Owners Ins. Co. v. Ralph Gage Contracting, Inc.*, 2015 WL 11109791(N.D. Fla. April 15, 2015)(endorsement excluding inspections, issued after loss, ineffective to narrow coverage); George J. Couch, Cyclopedia of Ins. Law, §65:13 (2d ed. 1983). State Farm's sole asserted distinction is that the

---

[14] D.E. 46-6 at p. 57.

endorsements in these cases sought to take away coverage, while State Farm's post-loss endorsement sought to extend coverage to Liberty. (Initial Br. at 51.) State Farm's argument lacks merit, as it asserts the post-loss endorsement precisely to limit or otherwise restrict, rather than expand, Liberty's coverage. State Farm argues the endorsement restricts its coverage of Liberty to vicarious liability claims. Absent the endorsement, however, State Farm's Contractors Policy has no language supporting such a limitation. Consequently, the post-loss endorsement is invalid, as a matter of law.

State Farm's remaining arguments, that the words "you" and "your" in the Contractors Policy refer to the Named Insured, and that the "Who is an Insured" section of the Policy does not encompass Liberty, are relevant only to whether Liberty is an insured. That Liberty is an insured under the State Farm Contractors Policy is undisputed by virtue of the certificate of insurance.

## **CONCLUSION**

The District Court's judgment with respect to the Contractors Policy should be affirmed.

Lapin & Leichtling, LLP, 255 Alhambra circle, Suite 600, coral gables, Florida 33134 (305) 569-4100

## LIBERTY'S PRINCIPAL BRIEF ON CROSS-APPEAL

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this case under 28 U.S.C. §1332, because there is complete diversity of citizenship between Liberty and State Farm and the amount in controversy exceeds $75,000.

This Court has jurisdiction of the cross-appeal under 28 U.S.C. §1291, because it is an appeal from a final judgment that disposed of all parties' claims. On July 19, 2019, the District Court entered an "Amended Order on Remand Denying State Farm's Motion for Summary Judgment and Granting Liberty Mutual's Motion for Partial Summary Judgment". (D.E. 139.) On July 14, 2020, the District Court entered an "Order Adopting and Modifying the Report and Recommendations on the amount of Liberty Mutual's Damages" (D.E. 189), and, on July 14, 2020, entered a Final Judgment. (D.E. 191.) State Farm appealed the Final Judgment in Liberty's favor. Liberty appeals the portion of D.E. 139, merged into the Final Judgment, ruling State Farm's Commercial Umbrella Policy does not provide Liberty coverage for claims brought against Liberty for its own alleged acts of negligence.[15]

---

[15] If the Final Judgment on appeal is affirmed in its entirety, Liberty's cross-appeal will be moot.

Lapin & Leichtling, LLP, 255 Alhambra Circle, Suite 600, coral gables, Florida 33134 (305) 569-4100

## <u>STATEMENT OF ISSUES</u>

Whether the District Court erred in finding the scope of coverage under State Farm's Commercial Liability Umbrella Policy is limited solely to Liberty's vicarious liability for the acts of the named insured, Riteway.

## **STATEMENT OF THE CASE**

Liberty sued State Farm for declaratory relief and breach of two liability insurance policies State Farm issued to Riteway under which Liberty is an additional insured. The two liability policies consist of a Contractors Policy (the "Contractors Policy") and a Commercial Liability Umbrella Policy (the "Umbrella Policy"). Liberty sought a declaration that State Farm owed a duty to defend and indemnify Liberty in an underlying action by Regina Suarez and Jorge Sosa against Liberty and Riteway for property damage to their home (the "Underlying Lawsuit"). Liberty also sought damages for State Farm's failure to defend and indemnify it against the Underlying Lawsuit. While State Farm defended and settled claims against Liberty based on vicarious liability for Riteway's conduct, State Farm failed to defend or indemnify Liberty for the remaining claims against it.

After a previous appeal to this Court, which resulted in a remand to the District Court to analyze coverage under the Contractors Policy, Liberty has now obtained a Final Judgment in its favor under the Contractors Policy for the full amount of damages sought, which damages include the amounts Liberty paid to settle the Underlying Lawsuit against it, and Liberty's defense fees and costs. State Farm has appealed the Final Judgment in Liberty's favor. The District Court on remand also ruled, however, that the Umbrella Policy does not provide Liberty

coverage for claims arising out of its own alleged negligence. It is this ruling that Liberty cross-appeals. If the Final Judgment in favor of Liberty under the Contractors Policy is affirmed in its entirety, Liberty's appeal of the District Court's construction of State Farm's Umbrella Policy will be moot. On the other hand, were this Court to reverse the Final Judgment (or any portion of it) against State Farm on the Contractors Policy, such that there is either no coverage or insufficient coverage under the Contractors Policy for Liberty's damages, Liberty seeks a reversal of the District Court's determination that the Umbrella Policy does not provide Liberty coverage for claims brought against it for its own alleged negligence.

The additional insured provisions of State Farm's Umbrella Policy covered Liberty with respect to operations performed by Riteway, in the absence of any underlying insurance coverage. State Farm contended, and the District Court ruled, the Umbrella Policy provides coverage only for vicarious liability claims, and not claims involving Liberty's own negligence or independent conduct. (D.E. 139.) The District Court's July 19, 2019 Amended Order on Remand applied a 1997 Florida intermediate appellate court decision, involving a policy exclusion for the independent acts or omissions of the additional insured—which exclusion is wholly absent from State Farm's Umbrella Policy—to conclude the Umbrella Policy provided coverage only for vicarious liability claims. (D.E. 139.) But

46

binding and applicable Florida Supreme Court precedent, and other more recent Florida intermediate appellate court decisions, hold nearly identical additional insured policy provisions, referencing the named insured's "operations", also provide coverage for claims brought against the additional insured for its own negligence.

## I. COURSE OF PROCEEDINGS BELOW

The course of the proceedings is set forth in detail in the Answer Brief above. Pertinent to this cross-appeal, Liberty appeals the District Court's ruling in the Amended Order on Remand, merged into the Final Judgment, that State Farm's Umbrella Policy only provides Liberty coverage for its vicarious liability, and not for its own alleged negligent acts. (D.E. 139.)

## II. STATEMENT OF FACTS

Liberty entered into a Contractor Network Referral Program contract ("CNRP Contract") with Riteway, a home repair contractor, on March 28, 2003. Under the CNRP Contract, Riteway agreed to make Liberty an additional insured under a liability policy for claims arising out of the work or operations performed by Riteway, and to furnish Liberty with a certificate of insurance demonstrating the insurance was in force. (D.E. 36 ¶9; D.E. 45 ¶4, Ex. 1; D.E. 46-3, 48-50, Ex. 2.) State Farm issued the Contractors Policy to Riteway, with a policy period from

January 26, 2009 to January 26, 2010, and a limit of liability of $1,000,000.

(D.E. 36, Ex. 1; D.E. 37 ¶10.)

State Farm issued the Umbrella Policy to Riteway, with a policy period from

April 28, 2008 to April 28, 2009, and a limit of liability of $2,000,000. (D.E. 36

¶12, Ex. 3; D.E. 37 ¶12.) The Umbrella Policy, in the section captioned

"Comprehensive Business Liability", provides, in part:

> BUSINESS LIABILITY
>
> If you are legally obligated to pay damages for …:
>
> 3. property damage; …
>
> To which this insurance applies, we will pay your net loss minus the retained limit…

(*Id.*)

The Umbrella Policy further provides that State Farm has a duty to defend

under certain circumstances:

> RIGHT AND DUTY TO DEFEND
>
> 1.    When underlying insurance or any other insurance does not apply to an occurrence:
>
> If claim or suit is covered by this policy but not covered by any underlying insurance or any other insurance available to the insured, we will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent. …
>
> 2.    When underlying insurance applies to an occurrence:
>
> \*      \*      \*
>
> c. If the limits of the underlying insurance are exhausted by an occurrence, we will assume charge of the

> settlement or defense of any claim or proceeding against the insured resulting from the same occurrence. We will assume charge only when this policy applies and is immediately in excess of the underlying insurance without intervening excess insurance with another insurer.

(*Id.*)

The Umbrella Policy, in a section captioned "Designation of Insured", provides:

> 2. Each of the following is also an insured:
>
> \*      \*      \*
>
> d.      any person or organization for whom you have agreed to provide insurance such as is afforded by this policy. Such agreement must be in the form of a written contract. This applies only with respect to:
>
>> (1)      operations you perform;
>>
>> (2)      facilities you own or use; or
>>
>> (3)      the underlying limit applicable to your insurance with respect to such operation or facility;….

(*Id.*)

On February 26, 2010, Regina Suarez and Jorge Sosa (the "Homeowners") filed the Underlying Lawsuit against Liberty, alleging damages to their home resulting from work performed by Riteway, and asserting various claims against Liberty. (D.E. 36 ¶ 15; D.E. 37 ¶ 15; D.E. 77 at 3.) State Farm's claims department determined the loss in the Underlying Lawsuit occurred on March 27, 2009, within

the policy period of State Farm's Contractors and Umbrella Policies. (D.E. 46-6,
Cintron Dep. 68-69, Ex. 1 to Ex. 3, & Ex. 3 to Ex. 3.)

On April 10, 2010, an Amended Complaint was filed in the Underlying
Lawsuit, adding Riteway as a defendant. (D.E. 36, Ex. 4.) The Amended
Complaint alleges that the Homeowners notified Liberty that the dining room floor
in their home was sagging. (D.E. 36, Ex. 4 ¶¶ 9-12.) The Amended Complaint
further alleges that Liberty directed Riteway to repair the property, Riteway
commenced demolition without properly securing the floor, causing the collapse of
the first floor, which crushed the crawlspace, plumbing pipes, and electrical
conduits, thereby compromising the structure, and causing severe damages to the
home. (D.E. 36, Ex. 4 ¶¶ 18, 29-30.) The Amended Complaint further alleges that
Riteway damaged or lost the Homeowners' personal property when it packed it up
and stored it. (D.E. 36, Ex. 4 ¶¶31-32,62,65.) The Amended Complaint included
counts against Liberty for breach of contract, breach of implied covenant of good
faith and fair dealing, and negligence, and counts against Riteway for negligence,
breach of third-party contract, breach of contract, and breach of the implied
covenant of good faith and fair dealing. (D.E. 36, Ex.4.) State Farm was notified of
the Amended Complaint in the Underlying Lawsuit in 2010, and also received a
June 28, 2011 letter from Liberty's counsel to Riteway, tendering the Underlying
Lawsuit on or about July 8, 2011. (D.E. 46-3 at 25-26; D.E. 36 ¶ 17; D.E. 37 ¶ 17,

D.E. 46-5, State Farm's Interrog. Answer #3.) State Farm responded to Liberty's June 28, 2011 tender letter by stating that it had no duty to defend or indemnify Liberty. (D.E. 36 ¶ 18; D.E. 37 ¶ 18.)

On October 18, 2012, a Second Amended Complaint was filed in the Underlying Lawsuit, adding a count against Liberty for "Vicarious Liability for Gross Negligence and Fraud by Riteway." (D.E. 36 ¶ 19, Ex. 5; D.E. 37 ¶ 19.) On March 18, 2013, Liberty again sent a letter to State Farm's counsel, requesting a defense. (D.E. 77 at 4; D.E. 36 ¶ 20; D.E. 37 ¶ 20.)

On May 1, 2013, a Third Amended Complaint was filed, adding counts against Liberty for "Negligent Hiring, Supervision and Retention Violation of the Building Code Law" and "Fraudulent Inducement," and modifying the vicarious liability count against Liberty. (D.E. 36 ¶ 21, Ex. 6; D.E. 37 ¶ 21.) On October 9, 2013, Liberty, once again, sent a letter to State Farm's counsel, demanding State Farm defend and indemnify Liberty. (D.E. 77 at 5; D.E. 36 ¶ 22; D.E. 37 ¶ 22.) State Farm's counsel responded, stating that Liberty is "not an insured," and "State Farm continues to disagree that it has any duty to defend Liberty Mutual, and respectfully declines Liberty's request for defense and indemnity." (D.E. 77 at 5; D.E. 36 ¶ 23; D.E. 37 ¶ 23.) On March 7, 2014, Liberty's counsel sent a letter to State Farm's counsel, requesting, once again, State Farm defend Liberty. (D.E. 77 at 5; D.E. 36 ¶ 25; D.E. 37 ¶ 25.) In an April 17, 2014 letter, State Farm agreed, for

the first time, to provide Liberty with a defense under a reservation of rights, stating Liberty is an additional insured under the Contractors Policy and Umbrella Policy, but only with respect to Count V of the Third Amended Complaint, because it sets forth vicarious liability allegations against Liberty that are potentially within coverage. (D.E. 10, Ex. A; D.E. 77 at 5; D.E. 36 ¶ 26; D.E. 37 ¶ 26.)

On April 22, 2014, State Farm prepared the AI Endorsement, which purports to make Liberty an additional insured to the extent that liability is imposed on Liberty solely because of Riteway's work performed for Liberty. (D.E. 46-5, State Farm Interrog. Answer #4; D.E. 46-3, 76; D.E. 46-4, 93; D.E. 36 ¶ 24; D.E. 37 ¶ 24.) State Farm management in the claims department instructed State Farm underwriting to prepare the AI Endorsement, identifying Liberty as an additional insured, and to backdate it to the policy period when the loss occurred. (D.E. 46-4, Cintron Dep. at 92-94.) On August 25, 2014, State Farm wrote Liberty, stating it agreed to pay only those attorneys' fees and costs incurred by Liberty beginning May 1, 2013, when the Third Amended Complaint was filed. (D.E. 10 ¶ 14, Ex. B; D.E. 36 ¶ 28; D.E. 37 ¶ 28.) State Farm again stated its position that Liberty was afforded coverage only for its vicarious liability. *Id.*

Liberty settled all claims against it in the Underlying Lawsuit, except the previously settled Count V in the Third Amended Complaint that State Farm

treated as alleging vicarious liability and, therefore, covered under its Policies, agreeing with the Homeowners to allocate the settlement payments solely to Count II, labeled "Breach of Contract to Repair." Liberty filed the underlying settlement agreement and other related documents with the District Court under seal. (D.E. 47; D.E. 50.)

## III.   STANDARD OF REVIEW

The District Court's order on summary judgment, construing the Umbrella Policy, is reviewed by this Court *de novo*. *Lumber & Wood Prods., Inc. v. New Hampshire Ins. Co.*, 807 F.2d 916, 918 (11th Cir. 1987) (construction of a policy of insurance, which involved a mixed question of law and fact, is reviewed *de novo*); *Tobin v. Michigan Mut. Ins. Co.*, 398 F.3d 1267, 1273 (11th Cir. 2005) (interpretation of a contract is a question of law reviewed *de novo*).

## SUMMARY OF THE ARGUMENT

## I.   THE DISTRICT COURT ERRED BY FINDING COVERAGE AVAILABLE TO LIBERTY UNDER STATE FARM'S UMBRELLA POLICY WAS LIMITED TO VICARIOUS LIABILITY FOR THE ACTS OF THE NAMED INSURED

The scope of coverage afforded Liberty, based on the additional insured provision in State Farm's Umbrella Policy, which provides coverage to the additional insured "with respect to operations [Riteway] performs," as interpreted by controlling Florida Supreme Court precedent, includes coverage arising out of Riteway's operations beyond mere vicarious liability, and includes liability for

53

Liberty's own negligence or independent conduct. *Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733 (Fla. 1998). In reaching the opposite conclusion, the District Court relied upon an inapplicable intermediate appellate court case, *Liberty Mutual Insurance Company v. Capeletti Brothers, Inc.*, 699 So. 2d 736 (Fla. Dist. Ct. App. 1997), that predates the controlling Florida Supreme Court precedent in *Container Corporation of America.* There, in denying coverage to the additional insured, the intermediate appellate court relied upon an exclusion for the additional insured's own acts or omissions, which is wholly absent from the Umbrella Policy in this case. Because the scope of coverage afforded Liberty is not limited to vicarious liability claims, Liberty is entitled to recover from State Farm under the Umbrella Policy, to the extent no coverage is afforded under the Contractors Policy, all of its defense fees and costs incurred from June 28, 2011, when Liberty first tendered the Underlying Lawsuit to State Farm, as well as the amounts that Liberty paid to settle the Underlying Lawsuit.

## **ARGUMENT**

**I. THE DISTRICT COURT ERRED BY FINDING THAT COVERAGE AVAILABLE TO LIBERTY UNDER STATE FARM'S UMBRELLA POLICY WAS LIMITED TO ITS VICARIOUS LIABILITY FOR THE ACTS OF THE NAMED INSURED**

The scope of coverage afforded Liberty, based on the additional insured provision in the Umbrella Policy, which provides coverage to the additional insured "with respect to operations [Riteway] performs," under controlling Florida

Supreme Court precedent, includes coverage for Liberty arising out of Riteway's operations, which extends beyond Liberty's mere vicarious liability, so as to include liability for its own negligence or independent conduct. *Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733 (Fla. 1998) (coverage under contractor's liability policy, listing plant owner as additional insured "for operations at operations site", was not limited to additional insured's vicarious liability, but extended to its liability for its own negligence); *Monticello Ins. Co. v. City of Miami Beach*, 2009 WL 667454, at *6-9 (S.D. Fla. Mar. 11, 2009) (additional insured endorsement, which provided coverage, "but only with respect to liability arising out of the operations performed for such additional insured by or on behalf of the named insured," as a matter of law, provided coverage for additional insured's own negligence, and was not limited to vicarious liability claims); *Koala Miami Realty Holding Co., Inc. v. Valiant Ins. Co.*, 913 So. 2d 25 (Fla. Dist. Ct. App. 2005) (additional insured endorsement, which provided coverage "but only with respect to liability arising out of your ongoing operations performed for that insured," provided coverage even for additional insured's own negligence); *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 314 F. Supp. 3d 1284 (M.D. Fla. May 21, 2018) ("*Zurich I*") [16] (additional insured

---

[16] Vacated pursuant to joint motion by the parties to facilitate a settlement. *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 2020 WL 1884708 (M.D. Fla. Jan. 9,

endorsement, which provided coverage "but only with respect to liability arising out of [named insured's] work", and which defined "[named insured's] work" as "work or operations performed by [named insured]", provided coverage for additional insured's own negligence").

In *Container Corporation***Error! Bookmark not defined.**, Southern Contractors, Inc. ("Southern") had a contract with Container Corporation of America ("Container") to do work at a plant operated by Container, and agreed in the contract to purchase a liability policy, naming Container as an additional insured. *Container Corp.*, 707 So. 2d at 735. Southern secured a policy from Maryland Casualty Company ("Maryland"), which identified Container as an additional insured and stated "Interest for operations at operations site by Southern Contractors, Inc." An employee of Southern later sued Container, alleging he was injured at Container's plant as a result of Container's negligence. *Id*. Maryland filed a declaratory judgment action on whether Container was insured for this type claim. *Id*.

The trial court entered summary judgment for Maryland, reasoning coverage for Container was limited to vicarious liability and did not cover Container for its own negligence. *Id*. The First District Court of Appeal affirmed. *Id*. The Florida Supreme Court accepted jurisdiction, based on conflict between the First District's

2020) ("*Zurich II*").

decision and a decision by the Fourth District—*Florida Power & Light Co. v. Penn America Ins. Co.*, 654 So. 2d 276 (Fla. Dist. Ct. App. 1995). *Container Corp.*, 707 So. 2d at 734-35. The Florida Supreme Court quashed the First District's decision and approved the Fourth District's decision in *Florida Power & Light*. *Id.* at 737. The Florida Supreme Court held the Maryland policy contained no specific language limiting coverage to vicarious liability, and, therefore, Container was entitled to coverage "for its own negligence arising out of 'operations at operations site by Southern Contractors.'" *Id.* at 736.

In *Florida Power & Light*, approved by the Florida Supreme Court in *Container Corporation*, Florida Power and Light ("FPL") had a contract with Eastern Utility Construction, Inc. ("Eastern") for Eastern to do renovations for FPL's substation. The contract required Eastern to purchase liability insurance, and Eastern procured a policy that insured "any person, organization, trustee or estate…but only with respect to operations by or on behalf of the Named Insured or facilities used by the Named Insured." *Container Corp.*, 707 So. 2d at 735 (quoting *Fla. Power & Light*, 654 So. 2d at 278). An employee of Eastern was injured at the substation and sued FPL for its negligence. *Container Corp.*, 707 So. 2d at 735. The issue in the case was whether the claim against FPL fell within the policy provisions "but only with respect to operations by or on behalf of the Named Insured." *Id.* The Fourth District held FPL was an additional insured,

Lapin & Leichtling, LLP, 255 Alhambra circle, Suite 600, coral gables, Florida 33134 (305) 569-4100

and it explained there was no language that required fault on the part of Eastern before FPL could be considered an additional insured. *Id.* (citing *Fla. Power & Light*, 654 So. 2d at 279). Rather, the language required only that FPL's liability arise out of Eastern's operations. *Container Corp.*, 707 So. 2d at 735. The Fourth District observed the policy did not have specific language limiting coverage to claims of vicarious liability, and the additional insured provision was ambiguous at best, and, therefore, had to be considered in favor of FPL, as the insured. *Id.*

Here, State Farm's Umbrella Policy insures Liberty "only with respect to…operations [Riteway] performs." This language is materially identical to the policy language reviewed by the Florida Supreme Court in *Container Corporation*, which was held to provide additional insured coverage for the additional insured's own negligence, and not just vicarious liability for the named insured's negligence. While the District Court attempts to distinguish *Container Corporation* by stating, without discussion or analysis, that the language "operations [Riteway] performs" is different from "operations arising out of Riteway's work, or operations or operations by or on behalf of Riteway"[17], the District Court's attempted distinction fails. First, the endorsement in *Container Corporation* does *not* have the language "arising out of", but instead references "interest for operations at operations site." And, although State Farm's Umbrella Policy adds the word "performs" after

_____

[17] (D.E. 139 at 39-40.)

"operations", the word "performs" does not narrow coverage. The Florida Supreme Court, in *Container Corp.,* specifically noted that the word "operation" is defined as "a doing or performing especially of action", and construed "operations" to mean "work done in the performance of [the named insured']s contract with [the additional insured]". *Container Corp.*, 707 So. 2d at 736-37. Because the Florida Supreme Court construed "operations" in this context to mean the performance of work, the word "performs" cannot possibly operate to narrow or materially alter coverage. And the word "performed" appears together with "operations" in the additional insured endorsements of at least three other Florida cases, holding that this language does not limited coverage to vicarious liability claims, but rather provides coverage for claims arising out of the additional insured's own negligence or independent conduct. *Monticello*, 2009 WL 667454, at *1 ("but only with respect to liability arising out of the *operations performed* for such additional insured by or on behalf of the named insured") (emphasis supplied); *Koala*, 913 So. 2d at 26 ("but only with respect to liability arising out of your ongoing *operations performed* for that insured") (emphasis supplied); *Zurich I*, 314 F. Supp. 3d at 1291-92 ("but only with respect to liability arising out of [named insured's] work", and defining "[named insured's] work" as "work or *operations performed* by [named insured]").

Because there is no language in the additional insured endorsement of State Farm's Umbrella Policy that could be reasonably interpreted as expressly excluding coverage for Liberty's own negligence, the coverage afforded to Liberty is not limited to vicarious liability, but rather includes coverage for Liberty's own conduct arising out of operations performed by Riteway. *Zurich I*, 246 F. Supp. 3d at 1361 ("When an endorsement does not expressly exclude coverage for the additional insured's negligence, Florida courts have broadly construed the policy to cover instances of negligence", finding that additional insured endorsement did not expressly exclude coverage for additional insured's negligence (citing *Container Corp.* and *Koala*.)) There is no question Liberty's liability for breach of the contract to repair—the Count in the Underlying Lawsuit to which all of Liberty's settlement payments for which it seeks indemnity from State Farm was allocated— arose out of operations performed by Riteway. In addition to the references in Liberty's motion for summary judgment, the District Court recited, in its Omnibus Order, facts establishing how Liberty's liability arose out of Riteway's operations:

- Liberty hired Riteway to perform repairs.

- Riteway began demolition and construction on the home to repair the sagging floor.

- While Riteway was performing this work, "the first floor collapsed crushing the crawlspace, plumbing pipes, electrical conduits, compromising the structure and causing severe damages to the home."

- The damages to the home were purportedly caused by Riteway's failure to "properly secure the floor."

(D.E. 77.)

The additional insured endorsements at issue in *Container Corporation*, *Florida Power & Light, Monticello Insurance Company*, *Koala Miami Realty Holding Company*, and *Zurich Am. Ins. Co.*, cannot be meaningfully distinguished from the additional insured provision in the State Farm Umbrella Policy, which makes Liberty an additional insured "*only with respect to … operations [the named insured] performs*." Specifically, the limiting language in the endorsements in those cases are as follows:

> Interest for operations at operations site by [named insured]. *Container Corp.*, 707 So. 2d at 735.

> But only with respect to operations by or on behalf of the Named Insured…. *Fla. Power & Light*, 654 So. 2d at 278.

> But only with respect to liability arising out of the operations performed for such additional insured by or on behalf of the named insured. *Monticello*, 2009 WL 667454, at *1.

> But only with respect to liability arising out of [named insured's] ongoing operations performed for that insured. *Koala*, 913 So. 2d at 26.

> But only with respect to liability arising out of [named insured's] work, and defining [named insured's] work as work or operations performed by [named insured]. *Zurich I*, 314 F. Supp. 3d at 1291-92.

In concluding the additional insured provision in State Farm's Umbrella Policy limited coverage to vicarious liability claims, the District Court relied solely

61

upon a clearly distinguishable, and non-controlling, intermediate appellate court decision, *Liberty Mut. Ins. Co. v. Capeletti Bros. Inc.*, 699 So. 2d 736 (Fla. Dist. Ct. App. 1997), which hinges upon the construction of an unambiguous exclusion for the additional insured's own acts or omissions. Neither the language of the exclusion at issue in *Capeletti*, nor any remotely similar language, can be found anywhere in State Farm's Umbrella Policy. Specifically, the exclusion in *Capeletti* provided:

> Additional Exclusions. This insurance does not apply to: …

> (4) "Bodily injury" or "property damage" arising out of any act or omission of the additional insured(s) or any of their employees, other than the general supervision of work performed for the additional insured(s) by you.

*Capeletti*, 699 So. 2d at 737. Because State Farm's Umbrella Policy does not contain any exclusions for the additional insured's own acts or omissions, and the language of the additional insured provision in State Farm's Umbrella Policy does not unambiguously exclude coverage for Liberty's own acts or omissions, coverage under State Farm's Umbrella Policy, as a matter of law, is not limited to claims for vicarious liability. To the extent State Farm's Contractors Policy does not provide Liberty coverage for its defense costs in the Underlying Lawsuit from June 28, 2011, and for the amounts Liberty paid to settle the Underlying Lawsuit, State Farm's Umbrella Policy clearly provides coverage for these sums.

## <u>CONCLUSION</u>

The District Court failed to apply controlling Florida Supreme Court precedent, and relied, instead, upon an earlier, clearly distinguishable, intermediate appellate court case, to erroneously conclude that coverage available to Liberty, as an additional insured under State Farm's Umbrella Policy, was limited to claims for Liberty's vicarious liability. In the event this Court reverses the final judgment in favor of Liberty under State Farm's Contractors Policy, this Court should reverse and remand this case to the District Court for entry of final judgment in Liberty's favor under State Farm's Umbrella Policy for Liberty's defense fees and costs incurred in the Underlying Lawsuit from June 28, 2011, and the amounts it paid to settle the Underlying Lawsuit.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify this Answer Brief and Cross-Initial Brief comply with Fed. R. App. P. 28.1, because, excluding the parts of the document exempted by Fed R. App. P 32(f), the document has fewer than 15,300 words, both briefs comply with the typeface requirement of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6).

### CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing brief has been sent by the Court's electronic filing system to all counsel on the service list below on December 16, 2020.

Respectfully submitted,

LAPIN & LEICHTLING, LLP
*Attorneys for Appellee-Cross-Appellant Liberty*
*Mutual Fire Insurance Company*
255 Alhambra Circle, Suite 600
Coral Gables, Florida 33134
Telephone No.:   (305) 569-4100
Facsimile No.:   (305) 569-0000

By:   s/ Jonathan R. Rosenn
        JONATHAN R. ROSENN
        Florida Bar No. 0101346
        jrosenn@LL-lawfirm.com
        eservice@LL-lawfirm.com
        JEFFREY S. LAPIN
        Florida Bar No. 993298
        jlapin@LL-lawfirm.com
        eservice@LL-lawfirm.com

### SERVICE LIST

Elizabeth K. Russo, Esq.
ekr@russoappeals.com
e-service@russoappeals.com
Russo Appellate Firm, P.A.
7300 North Kendall Dr. Suite 600
Miami, FL 33156
Telephone: (305) 666-4660
Facsimile: (305) 666- 4470
*Attorneys for Appellant/Cross-Appellee*

Jay B. Green, Esq.
Laurea A. Faller, Esq.
jgreen@gaflaw.com
lfaller@gaflaw.com
Green & Ackerman, P.A.
1200 North Federal Highway, Suite 301
Boca Raton, FL 33432
Telephone: (561)347-2400
Facsimile: (561) 955-9555
*Attorneys for Appellant/Cross-Appellee*