# United States Court of Appeals
# Eleventh Circuit

---

CASE NO.: 20-12970-GG
CASE NO.: 20-13637-GG
CONSOLIDATED

---

STATE FARM FLORIDA INSURANCE COMPANY,

Appellant/Cross-Appellee,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Appellee/Cross-Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

---

## REPLY BRIEF AND ANSWER BRIEF ON
## CROSS-APPEAL OF APPELLANT/CROSS-APPELLEE

---

Respectfully submitted,

GREEN, ACKERMAN & MATZNER, P.A.
1200 North Federal Highway, Suite 301
Boca Raton, Florida 33432
Telephone: (561) 347-2400
-and-
RUSSO APPELLATE FIRM, P.A.
7300 North Kendall Drive, Suite 600
Miami, Florida 33156
Telephone (305) 666-4660

**Counsel for Appellant/Cross-Appellee**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Appellant/Cross-Appellee, in compliance with FRAP 26.1 and 11th CIR. R. 26.1-1, certifies that the following listed persons, parties, and corporations have an interest in the outcome of this appeal.

Goodman, Jonathan, United States Magistrate Judge

Green, Ackerman & Matzner, P.A., Counsel for Appellant

Green, Jay B., Counsel for Appellant

Lapin & Leichtling, LLP, Counsel for Appellee

Lapin, Jeffrey S., Counsel for Appellee

Lenard, Joan A., United States District Judge

Liberty Mutual Fire Insurance Company, Appellee

Liberty Mutual Group, Inc.

Liberty Mutual Holding Company, Inc.

LMHC Massachusetts Holding, Inc.

Rosenn, Jonathan R., Counsel for Appellee

Russo Appellate Firm, P.A., Counsel for Appellant

Russo, Elizabeth, Counsel for Appellant

State Farm Florida Insurance Company, Appellant

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ..........................................C-1

TABLE OF AUTHORITIES .................................................................. iii

APPELLANT STATE FARM'S REPLY BRIEF ARGUMENT ............................1

    A. Liberty's failure to allocate its settlement among covered and
       noncovered claims precludes Liberty from recovering the
       settlement amount from liability insurer State Farm.......................1

    B. Under no circumstances is Liberty entitled to recover from
       State Farm the amount earmarked for attorney's fees that
       Liberty was required to pay for breaching its homeowners
       policy with its own insureds .............................................................4

    C. Any recovery by Liberty under the Contractors Policy was
       also subject to the policy limits .......................................................8

    D. This Court should reject Liberty's argument that there were
       "multiple" occurrences ...................................................................11

    E. The additional insured endorsement must be given effect for
       Liberty to have coverage ................................................................13

CONCLUSION....................................................................................18

ANSWER BRIEF ON CROSS-APPEAL ................................................20

SUMMARY OF THE ARGUMENT ....................................................20

ARGUMENT .......................................................................................21

    THE DISTRICT COURT CORRECTLY RULED THAT
    STATE FARM HAD NO FURTHER INDEMNITY
    OBLIGATION UNDER THE UMBRELLA POLICY.......................21

CONCLUSION ........................................................................................28

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)..................................29

CERTIFICATE OF SERVICE ..............................................................29

# TABLE OF AUTHORITIES

**Page**

## CASES:

*Access Now, Inc. v. SW Airlines Co.*
  385 F.3d 1324 (11th Cir. 2004). ............................................................18

*Allstate Ins. Co. v. Orthopedic Specialists*
  212 So. 3d 973 (Fla. 2017)............................................................ 16-17

*Bradfield v. Mid-Continent Cas. Co.*
  2015 WL 6956543 (M.D. Fla. Nov. 10, 2015 ......................................1

*Citizens Prop. Ins. Corp. v. Manor House, LLC*
  2021 WL 208455 (Fla. Jan. 21, 2021) ...............................................11

*Consolidation Coal Co. v. Liberty Mut. Ins. Co.*
  406 F. Supp. 1292 (W.D. Pa. 1976)....................................... 23, 26, 27

*Container Corp. of America v. Maryland Cas. Co.*
  707 So. 2d 733 (Fla. 1988)....................................... 22, 23, 24, 25, 26

*Container Corp. v. McKenzie Tank Lines, Inc.*
  680 So. 2d 509 (Fla. 1st DCA 1996). ................................................22

*Florida Power & Light Co. v Penn. America Ins. Co.*
  654 So. 2d 276 (Fla. 4th DCA 1995)....................................... 22, 23, 25, 26, 27

*Garcia v. Federal Ins. Co.*
  969 So. 2d 288 (Fla. 2007)............................................... 23, 24, 26, 27

*Gen. Sec. Ins. Co. v. Barrentine*
  829 So. 2d 980 (Fla. 1st DCA 2002) .................................................17

*Helvering v. Gowran*
  302 U.S. 238 (1937).........................................................................27

*Highland Holdings, Inc. v. Mid-Continent Cas. Co*.
   2016 WL 3447523 (M.D. Fla. June 23, 2016),
   *aff'd* 687 F. App'x. 819 (11th Cir. 2017)..................................................... 1, 2, 3

*Hubbel v. Aetna Cas. Sur. Co*.
   758 So. 2d 94 (Fla. 2000)....................................................................5

*Koala Miami Realty Holding, Inc. v. Valiant Ins. Co*.
   913 So. 2d 25 (Fla 3d DCA 2005) ............................................... 22, 24

*Magluta v. Samples*
   162 F.3d 662, 664 (11th Cir. 1998). ....................................................27

*Mid-Continent Cas. Co. v. C-D Jones & Co. Inc*
   2014 WL 12469921 (N.D. Fla. Jan. 22, 2014). ...................................6

*Monticello Ins. Co. v. City of Miami Beach*
   2009 WL 667454 (S.D. Fla. Mar. 11, 2009)......................................24

*Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins. Co*.
   2008 WL 544732 (S.D. Fla. Feb. 26, 2008) ......................................15

*Scottsdale Ins. Co. v. Haynes*
   793 So. 2d 1006 (Fla. 5th DCA 2001)..................................................5

*Shawnee Auto Serv. Ctr., Ltd v. Cont'l Cas. Co*.
   782 F. Supp. 1503 (D. Kan. 1992).......................................................3

*State Farm Fire and Cas. Co. v. Steinberg*
   393 F.3d 1226 (11th Cir. 2004). ..........................................................5

*State Farm Mut. Auto. Ins. Co. v. Menendez*
   70 So. 3d 566 (Fla. 2011).....................................................................17

*Trovillion Const. & Dev., Inc. v. Mid-Continent Cas. Co*.
   2014 WL 201678 (M.D. Fla. Jan. 17, 2014)........................................1

*United States v. Lopez*
   805 F. App'x 921 (11th Cir. 2020) ....................................................18

*Wollard v. Lloyds and Companies of Lloyds*
   439 So. 2d 217 (Fla. 1983)....................................................................5

*Zurich American Insurance Co. v Southern-Owners Insurance Co.*
   2020 WL 1884708 (M.D. Fla. Jan. 9, 2020).......................................24

*Zurich American Insurance Co. v Southern-Owners Insurance Co.*
   314 F. Supp. 3d 1284 (M.D. Fla. May 21, 2018) ................................24

**STATUTES:**

§ 627.428, Fla. Stat ....................................................................4, 5

## APPELLANT STATE FARM'S REPLY BRIEF ARGUMENT

**A. Liberty's failure to allocate its settlement among covered and noncovered claims precludes Liberty from recovering the settlement amount from liability insurer State Farm**

The law of Florida, including as applied by this Court, is simple and straightforward on the issue of what an insured must do when settling claims made against it by a claimant if the insured seeks to recover all or a portion of its settlement from its liability insurance carrier. Because a liability insurer must only pay for claims that are covered by the parties' liability insurance contract, the insured must either: (a) show that all of the claims it settled were covered; or (b) if some of the claims it settled were not covered, the insured must allocate the settlement amount among the covered and noncovered claims, or provide the reviewing court a feasible strategy for determining the covered amount. *Highland Holdings, Inc. v. Mid-Continent Cas. Co*., 2016 WL 3447523 (M.D. Fla. June 23, 2016), *aff'd* 687 F. App'x. 819 (11th Cir. 2017). As the *Highland* district court summed up the allocation rule, succinctly enough:

> "*…Florida law clearly requires the party seeking recovery...to allocate any settlement amount between covered and noncovered claims*," *Bradfield v. Mid-Continent Cas. Co*., 2015 WL 6956543, at *24 (M.D. Fla. Nov. 10, 2015) (Hodges, J.), and Highland Holdings fails to establish what portion of the $650,000 settled claims was covered by the insurance agreement. *Failure to establish how much the insured paid to settle covered claims "precludes recovery*." *Trovillion Const. & Dev., Inc. v. Mid-Continent Cas. Co*., 2014 WL 201678, at *8 (M.D. Fla. Jan. 17, 2014)[.].

2016 WL 3447523, at 4. The district court further disallowed recovery because the insured had not offered any "feasible strategy to discern" the covered amount. 2016 WL 3447523, at *5. This Court affirmed the final judgment entered for the insurer, noting, *inter alia*:

> Highland failed to prove what amount of its settlement was attributable to the claims of advertising injury that were covered by its insurance policy. **Highland "had the burden ... <u>to apportion damages</u> and show that the settlement, or portions thereof, represented costs that fell within the coverage provisions of the policy**." [cite omitted].

687 F. App'x. at 823-24. (*See also* Initial Brief pp 33-34) (citing numerous other decisions applying this Florida rule of law).

Here, Liberty never did anything to show - or even contend - that all of the four claims it settled were covered under the State Farm liability insurance policy. Neither did Liberty apportion the settlement amount it paid among the covered and noncovered claims, or offer any feasible strategy to discern the covered amount, if any, as required by Florida law. State Farm does not believe that any of the settled claims were covered for the reasons detailed in the Initial Brief. For present purposes, the point is that Florida law required a showing of coverage as to all claims, or an allocation of the settlement amount among covered and noncovered claims. Liberty did neither, and thus may not recover the settlement amount from State Farm.

Liberty tries to distinguish *Highland* and all of the other decisions applying the Florida allocation rule by saying that, in those cases, the insured had not made any allocation, while Liberty did make an allocation here. Liberty's Alice-in-Wonderland contention in this regard is that, while it did not apportion or allocate the settlement amount among covered and noncovered claims as it was required to do, it *did* make an "allocation" by allotting the entire amount to the one claim it believed was covered. The whole point of the Florida allocation law is that an insurer does not owe anything for claims that are not covered by its policy. An insured cannot create coverage that does not otherwise exist simply by ***saying*** that it allocated its whole settlement amount to what it thinks is a covered claim and nothing to the noncovered claims it also settled in order to maximize its recovery from the insurer who ***does not owe the whole amount***.

The only case cited by Liberty for the proposition that an insured can allocate a whole settlement to a covered claim only (despite settling noncovered claims as well) is *Shawnee Auto Serv. Ctr., Ltd v. Cont'l Cas. Co*., 782 F. Supp. 1503 (D. Kan. 1992), a Kansas district court decision applying a general Missouri law principle favoring settlements. In that case, the court decided that Missouri law would seem to permit an insured to attribute an entire settlement amount only to negligence claims that were covered by the policy, without allocating anything to noncovered claims that were also settled. The *Shawnee* district court's guess as to what might be

allowed under Missouri law in that diversity case might or might not have been correct, but the holding runs directly counter to Florida's firmly-established allocation rule under which the settlement amount ***must*** be allocated among covered and noncovered claims.

Liberty's 'allocation' argument, seeking to gain monies that are not owed, is a brazen and transparently self-serving attempt to circumvent Florida's actual law on allocation and the purpose behind it. The district court was wrong in accepting the argument, and it should be rejected by this Court. If the applicable and uniform Florida law requiring allocation of settlement proceeds among covered *and* noncovered claims is enforced, then the final judgment for Liberty must be reversed. Liberty's failure to properly allocate the settlement amount precludes Liberty from recovering the settlement from State Farm.

**B.  Under no circumstances is Liberty entitled to recover from State Farm the amount earmarked for attorney's fees that Liberty was required to pay for breaching its homeowners policy with its own insureds**

Liberty set out a specific sum in its settlement agreement with its insureds to pay for attorney's fees it owed to the insureds for an *admitted* breach of its homeowners policy that automatically triggered the insureds' right to fees under Florida's attorney's fees insurance statute, § 627.428, Fla. Stat. (*See* DE 48, listing under seal the very substantial amount of the settlement allotted for attorney's fees). The record shows that, *after* Liberty's insureds, Suarez-Sosa, filed suit against

Liberty, Liberty admitted to an underpayment on their claim, and paid the amount due. (DE 173, at 55-56, 62). That post-suit payment created the insureds' statutory right to recover attorney's fees from Liberty. *Wollard v. Lloyds and Companies of Lloyds*, 439 So. 2d 217, 218 (Fla. 1983) (insurer's payment after suit is filed acts as a confession of judgment triggering the insured's right to fees under § 627.428).

The State Farm Contractor's Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages … because of property damage" (DE 36-1, at 30), and defines "property damage" as: "physical injury to or destruction of tangible property, including all loss of use of that property." (DE 36-1, at 40). A district court applying Florida law has held that substantively identical policy wording does ***not*** include attorney's fees as "damages" the insurer is legally obligated to pay as damages because of property damage, and noted:

> The Florida Supreme Court * * * has recognized that "[g]enerally, the law is clear that attorney's fees are not considered to be a loss or damages, and to be recoverable must be expressly provided for by statute, rule, or contract." *Hubbel v. Aetna Cas. Sur. Co.*, 758 So. 2d 94, 97 (Fla. 2000). Further, "[i]n the absence of definitive guidance from the Florida Supreme Court, [this Court] follow[s] relevant decisions of Florida's intermediate appellate courts." *State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004). Florida's Fifth District Court of Appeal has held that the plain wording of a policy provision that covers "damages because of injury ..." does not include attorney's fees. *Scottsdale Ins. Co. v. Haynes*, 793 So. 2d 1006, 1008-09 (Fla. 5th DCA 2001). The court reasoned that attorney's fees "are not damages as that term is commonly understood." *Id.* at 1009. The court decided instead that attorney's fees "are a separate type of relief requiring special language before they may be assumed to have been included in a 'damage' award in an insurance

5

policy." *Id.* at 1010.

*Mid-Continent Cas. Co. v. C-D Jones & Co. Inc.*, 2014 WL 12469921, *2 (N.D. Fla.
Jan. 22, 2014).

The set sum Liberty agreed to pay its insureds as statutory attorney's fees are
not covered by the Contractor's Policy, either by its terms or as a matter of Florida
law. For this further reason - in addition to Liberty's lack of entitlement to any
portion of the settlement amount it paid due to its failure to allocate - the amount
Liberty agreed to pay in attorney's fees is not recoverable from State Farm.

Liberty responds by saying that, even though its liability for the insureds'
attorney's fees arose under their Count I claims for Liberty's breach of the
homeowners insurance contract, it does not matter because Liberty allocated the
entire settlement amount to Count II. That argument does not help Liberty because
the attorney's fees are not covered, and therefore not recoverable from State Farm,
regardless of allocation. Liberty's Count II maneuver counts for naught because
Liberty's obligation was to allocate the settlement amount amongst the covered and
non-covered claims.

Liberty also makes an entirely unsupportable reference to "the parties'
stipulation that the entire amount of the settlement was both allocated to Count II
and reasonable." (Appellee's Brief, p 28). In fact, the stipulation says, in pertinent
portion:

State Farm does not concede by this stipulation that Liberty Mutual is entitled to recover as damages any of the [amount redacted] settlement payment, and does not concede that the allocation of the settlement payments solely to Count II was proper or binding on State Farm.

(DE 175 - filed under seal because it recites the settlement amounts).

Liberty ends with an incorrect waiver argument, contending that State Farm did not raise the point about the designated payment for attorney's fees in the summary judgment briefing. In fact, however, and as Liberty well knows, Liberty did not produce its settlement agreement in the litigation below until Liberty sought to file it under seal ***after discovery was closed*** and on the date that dispositive motions were due)(Compare DE 28 scheduling order setting 12/18/15 as the cut off for fact discovery and 02/12/16 as the deadline for dispositive motions, with DE 47 - Liberty's 02/12 2016 motion to file its settlement agreement under seal). State Farm most definitely did object to Liberty's Count II allocation in its response to Liberty's motion for partial summary judgment as soon as State Farm was able to obtain a copy of the settlement agreement filed under seal. (DE 56, p 4).

Finally, and as Liberty also well knows, the parties stipulated that all issues as to damages, i.e., what amounts of the settlement might be recoverable by Liberty, would be decided after, and separately, from the coverage issues that the parties had

raised in their summary judgment briefing. (DE 75, p 1).[1] At all relevant times, State

Farm asserted its arguments as to the lack of coverage for the attorney's fees amount

Liberty paid in its settlement, both in the proceedings before the Magistrate Judge

on the damage amounts and in its objections to the Magistrate Judge's Report and

Recommendations. (DE 181, pp 3-4; DE 186, pp 13-14). State Farm made its

arguments about the lack of coverage for the attorney's fee amount Liberty paid in

its settlement at the appropriate times. Given the actual record filings, Liberty's

waiver argument on this point is not well taken.

**C.    Any recovery by Liberty under the Contractors Policy was also subject to the policy limits**

In addition to Liberty's failure to allocate precluding it from recovering any of

the settlement amount from State Farm, any recovery by Liberty would have been

subject to the policy limits. State Farm pled that affirmative defense in its Answers

to both Liberty's original Complaint and its Amended Complaint: "State Farm

asserts that its duties to reimburse and indemnify Liberty Mutual with respect to any

alleged loss, if any, are subject to the endorsements, to the deductibles, to the limit

of liability stated in the Contractors Policy and/or the Umbrella Policy; and to all

---

[1] Both parties' summary judgment motions concerned whether Liberty was entitled to coverage under the Contractors Policy and the Umbrella Policy only for its vicarious liability for its contractor, Riteway, or also for its own misconduct, as set out in the parties' summary judgment briefing. (DE 44, DE 46, DE 56, DE 58, DE 64, DE 65).

other limitations of liability contained in the policies." (DE 9, p 10; DE 37, p 11).

The Contractors Policy, which was attached by Liberty to its own operative Amended Complaint (D.E. 36-1), sets out the "Limits of Insurance" as follows:

1.    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a.  insureds;
   b.  claims made or suits brought;
   c.  persons or organizations making claims or bringing suits.

2.    The most we will pay for all damages because of bodily injury, property damage, personal injury, advertising injury and medical expenses arising out of any one occurrence is the Coverage L - Business limit shown in the Declarations.

(D.E. 36-1, at 38).

When the case finally reached the stage where damages were to be considered - after the original summary judgment in State Farm's favor was reversed by this Court for the district court to address in the first instance certain coverage issues identified by this Court - State Farm submitted evidence that State Farm paid the Contractors Policy limits in the settlement through which State Farm settled all Suarez-Sosa claims against Riteway and all vicarious liability allegations against Liberty. (DE 130 and DE 135)(under seal); (DE 171)(under seal). After the district court referred to the magistrate judge the matter of what damages Liberty might be

able to recover under the State Farm Contractors Policy,[2] the magistrate judge was presented with: (a) State Farm's affirmative defense that any recovery by Liberty was subject to the Contractor's Policy terms as to the limits of insurance; and (b) State Farm's evidence that the limits of insurance had been paid on behalf of Riteway and on behalf of Liberty for its vicarious liability for Riteway. (DE 130 and DE 135)(under seal); (DE 171)(under seal).

Without adjudicating State Farm's defense based on the policy terms as to the limits of insurance, the district court accepted Liberty's argument (which it raised in its briefing on the damages issue) that State Farm had to raise another, different affirmative defense, i.e., that the policy limits were "exhausted," instead of relying on the policy terms as to the limits of insurance. (DE 189, pp 21-31((under seal). For the reasons set forth in the Initial Brief at 38-44, State Farm does not believe that the cases cited by Liberty and the district court support the conclusion that exhaustion of policy limits is a separate affirmative defense that must be pled in addition to the affirmative defense that any recovery is governed by the policy terms setting forth limits of insurance. State Farm raised the policy terms as to limits of insurance as a limitation on any recovery Liberty might make from the outset of the case, and

---

[2] The district court found that State Farm had already paid all that was owed under the Umbrella Policy by settling the vicarious liability allegations against Liberty. (DE 77, pp 14-15, 17)

submitted evidence to support the defense at the time it became relevant, i.e., when the district court directed the magistrate judge to hold proceeding to determine what damages Liberty might be able to recover from State Farm.

The documented fact that State Farm had paid the Contractors Policy limits on behalf of Riteway and Liberty in settling the claims against Riteway and the vicarious liability allegations against Liberty supported State Farm's affirmative defense that any recovery by Liberty was governed by the Policy limits of insurance. *See Citizens Prop. Ins. Corp. v. Manor House, LLC*, 2021 WL 208455 (Fla. Jan. 21, 2021)(reaffirming the principle that, absent a claim for bad faith, any recovery is limited to an insurance policy's coverage limits). For this reason, in addition to Liberty's failure to allocate the settlement amount among covered and uncovered claims, the district court erred when it ordered State Farm to again pay the policy limits (and more) to Liberty.

## D.  This Court should reject Liberty's argument that there were "multiple" occurrences

Liberty advanced another argument in the proceedings before the magistrate judge as to why it should be able to recover from State Farm the entire amount of its settlement with its insureds, the Suarez-Sosa Plaintiffs, to wit, that there were "multiple occurrences" involved in the insureds' claim against Liberty for improper handling of their property damage claim under their Liberty homeowners policy.

(*See* DE 188, pp 10-14). As Liberty accurately acknowledged (DE 188, p 10), the magistrate judge never addressed this argument in his Report and Recommendations. (DE 184). Neither did the district court accept Liberty's "multiple occurrences" argument, saying nothing about it in the Sealed Order Adopting and Modifying Sealed Report and Recommendations on the Amount of Liberty's Damages. (DE 189)(under seal). Nor should this Court accept the argument at this stage, as it presents *no* grounds for State Farm owing more money to Liberty.

Liberty's "multiple occurrences" argument is based, *not* on any evidence Liberty ever filed in the record at any time, but only on the allegations of the operative complaint from the Suarez-Sosa homeowner-insureds' suit against Liberty and Riteway. (Answer Brief, pp 37-38). Liberty points to paragraphs from the subject Suarez-Sosa complaint, all of which detail things that *Riteway* did wrong, according to Suarez-Sosa, e.g., "as *Riteway* was actively and unnecessarily removing floor joists;" "*Riteway* unnecessarily removed and discarded the Plaintiffs' kitchen cabinets;" "*Riteway* lost several boxes containing Plaintiffs' belongings;" "in further violation of the Florida Building Code and Miami Beach permit, *Riteway* removed the joists in the kitchen, the floor;" etc. (Answer Brief, pp 37-38, citing DE 36-6, pp 10-12, 15). These are what Liberty describes as four separate occurrences, which gets Liberty precisely nowhere in this appeal because

State Farm settled *all* of the Suarez-Sosa claims against Riteway and *all* Suarez-Sosa allegations of Liberty's vicarious liability for Riteway's conduct. (DE 130)(under seal). As all of those claims and allegations were settled by State Farm, it is immaterial whether Riteway's conduct constituted a single occurrence, or, as Liberty argues, "at least four occurrences." (Answer Brief, p 37).

We also note that the upshot of Riteway's (and Liberty's) repair work was that the whole house must be razed, as also alleged in the Suarez-Sosa complaint upon which Liberty relies: "Because of the extent of the damages caused by removal of the floor joists, and based on all factors considered, Plaintiffs' home is a constructive total loss and must be razed to comply with building code." (DE 36-6, p 18). There are, in short, no separate areas of damage to be repaired, if, indeed, separate items of repairs in a single home could ever be deemed separate occurrences for purposes of "per occurrence" limits, which would effectively remove policy limits for single residence property damage claims.

**E.    The additional insured endorsement must be given effect for Liberty to have coverage**

As detailed in full in the Initial Brief, it was not until August 28, 2013[3] that Liberty first gave State Farm copies of various Certificates of Insurance that it had

---

[3] August 2013 was *years* after Suarez-Sosa filed suit against Liberty in February 2010. (DE 1, p 6).

obtained from various carriers for Riteway spanning the years over which Riteway had been acting as a contractor for Liberty, including the State Farm Certificate of Insurance pertinent to this case. (DE 45-11). Because, for unknown reasons, that Certificate of Insurance had never been transmitted to State Farm's underwriting department, Liberty had not been added to the Riteway Contractors Policy with an additional insured endorsement. (DE 46-4, pp 87-88). When Liberty finally gave the Certificate of Insurance to State Farm, the claims personnel investigated, and, upon learning that underwriting had never received it, instructed that an additional insured endorsement be issued with an effective date of January 2006, the inception date of the Riteway Contractors Policy. (DE 46-4, p 96).

In uncontradicted and unchallenged testimony, the State Farm underwriting department representative confirmed that the additional insured endorsement was precisely the form that was used to cover a relationship like that between Riteway and Liberty. (DE 46-4, pp 95-96). Riteway was acting as a contractor for Liberty, and Liberty's own form Contractors Agreement with Riteway only required Riteway to obtain insurance "against liability arising out of the work or operations performed by or on behalf of Contractor [Riteway]." (DE 45-1, p 5). Liberty's efforts in this suit to take advantage of the mistake in transmission of the Certificate of Insurance by arguing that it should now receive *full coverage* under Riteway's insurance policy, including for Liberty's own independent torts and breaches of

contract, are overreaching in the extreme, when Liberty never contracted for or expected Riteway to buy any such full coverage for Liberty.

State Farm agrees that a Certificate of Insurance can create additional insured status, but the coverage afforded is purely a matter of what the policy itself provides. The Certificate of Insurance states:

> **THE CERTIFICATE OF INSURANCE IS NOT A CONTRACT OF INSURANCE AND NEITHER AFFIRMATIVELY NOR NEGATIVELY AMENDS, EXTENDS, OR ALTERS THE COVERAGE APPROVED BY ANY POLICY DESCRIBED HEREIN.**

(DE 45-11, p 7). As the *Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins. Co*., 2008 WL 544732 (S.D. Fla. Feb. 26, 2008), decision relied upon by the district court below noted in discussing this customary language in Certificates of Insurance:

> While the disclaimer language serves to inform the certificate holder that it is necessary to look to the policy to determine the scope of coverage, it does not impact whether an entity has status as an insured. In other words, the disclaimer language functions to inform the certificate holder that *the certificate of insurance must be read in conjunction with the terms, conditions, and exclusions of the policy. As such, the disclaimer language may result in a scenario where a party is an insured under the policy pursuant to a certificate of insurance, but is still not entitled to coverage under the policy because the claimed loss is outside the scope of coverage for the policy or is specifically excluded.* [cites omitted].

2008 WL 544732, at *5. The term of the Contractors Policy relied upon by Liberty to assert that it had coverage for its own conduct, separately from its vicarious liability for Riteway, is the following:

**Business Liability**

We will pay those sums that the insured becomes legally obligated to pay

as damages because of bodily injury, property damage, or advertising injury to which this insurance applies . . .

(Answer Brief, p 39). Liberty just argues that it is an "insured" because of the Certificate of Insurance. This ignores that fact that the Contractors Policy itself has specific provisions as to "Who is an Insured."  The Contractor's Policy states:

DEFINITIONS: Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.

(DE 36-1, p 13). The "Named Insureds shown in the Declarations" are various Riteway companies. (DE 36-1, p 4). The Contractors Policy then also has a specific section providing "Who is an Insured" under the Section II Comprehensive Business Liability portion of the policy, defining who is an insured in addition to Named Insured Riteway. (DE 36-1, pp 37-38). All of the persons and entities specified are employed by, associated with, acting for, or owned by Riteway (*e.g.*, officers, directors, trustees, stockholders, employees, permissive users of mobile equipment, and newly acquired organizations), which do not include unaffiliated third parties, like Liberty. The rights and duties of insureds are dependent on the policy terms as to "Who is an Insured, " which plainly provide coverage only for the acts of Riteway and those acting on its behalf.

Liberty does not fall into any of the definitions of "Who is an Insured" under the Contractor's Policy terms. So, to read "insured" to include Liberty is to ignore the plain policy terms and definitions. *See, e.g., Allstate Ins. Co. v. Orthopedic*

*Specialists*, 212 So. 3d 973, 975-76 (Fla. 2017)("a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written"); *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011) ("In interpreting an insurance contract, we are bound by the plain meaning of the contract's text."); *Gen. Sec. Ins. Co. v. Barrentine*, 829 So. 2d 980, 981–82 (Fla. 1st DCA 2002) ("If the language of an insurance policy is clear, it must be construed to mean what it says and nothing more. Courts have no power to create insurance coverage, if it does not otherwise exist by the terms of the policy.") (internal citations omitted)).

This was why, when Liberty produced that Certificate of Insurance and it was determined that Liberty should have been added as an additional insured, the only way to correct the omission was by issuance of the Additional Insured Endorsement, which the undisputed testimony from the State Farm underwriter established is the only way that a third party can be added to a policy. (DE 46-4, pp 55-56). It was only by issuance of the Additional Insured Endorsement to amend the "Who is an Insured" section of the policy that Liberty could be afforded coverage, and only that way could the scope of the coverage be determined. The Additional Insured Endorsement states, in pertinent portion:

> WHO IS AN INSURED, under SECTION II DESIGNATION OF INSURED, is amended to include as an insured the Additional Insured shown above ...

(DE 36-1, p 70). State Farm rectified the original failure in transmission of the Certificate of Insurance by issuing the Additional Insured Endorsement to add Liberty as an additional insured as of the inception of the Contractors Policy. It was the right thing to do, and Liberty should have just accepted it as such rather than trying to seize advantage and argue for *full* coverage for itself that it never expected or had any reason to expect from its contractor Riteway's insurance policy.

As a final comment on Liberty's arguments about the Additional Insured Endorsement, we note that Liberty's Answer Brief, for the ***first time*** in the span of this protracted litigation, tries to suggest that there may have been some other form of endorsement available. (Answer Brief, pp 12-13, and p 12 n 5). Such speculation on Liberty's part comes far too late, having directed no discovery as to the speculative thought and having never raised it at any point in the proceedings in the district court. "Arguments not raised before the district court and raised for the first time on appeal are deemed waived." *United States v. Lopez*, 805 F. App'x 921, 922 (11th Cir. 2020) (citing *Access Now, Inc. v. SW Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

## CONCLUSION

Based on the foregoing facts and authorities and those set forth in the Initial Brief, Appellant State Farm respectfully submits that the final judgment and fee award in favor of Liberty should be reversed, and the case remanded for entry of

judgment in favor of State Farm. At a minimum, any final judgment should eliminate the settlement amount paid for the Suarez-Sosa's attorney's fees, and it should not exceed the State Farm policy limits.

## ANSWER BRIEF ON CROSS-APPEAL

## SUMMARY OF THE ARGUMENT

In Riteway's State Farm Commercial Liability Umbrella Policy ("Umbrella Policy"), Riteway, as the Named Insured, is referred to as "you." (DE 36-3). The Umbrella Policy has a section entitled "Who is an Insured," which provides, in pertinent portion:

> 2. Each of the following is also an insured:
>
> > d. any person or organization for whom you have agreed to provide such insurance as is afforded by this policy. Such agreement must be in writing. This applies only with respect to:
> >
> > > (1) operations you [Riteway] perform[.]

(DE 36-3, pp 12-13).

Liberty had such a written agreement with Riteway, and thus qualified for the specified coverage. (DE 45-1). Under the applicable Florida case law, this language from the Umbrella Policy affords Liberty coverage for its vicarious liability for operations Riteway performs. In State Farm's settlement of Liberty's homeowner-insureds' claims against Liberty and Riteway, State Farm settled all allegations against Liberty for its vicarious liability for Riteway and the operations Riteway performed, including with monies from the Umbrella Policy. (DE 130)(under seal).

Citing inapposite case law, Liberty asks this Court to rule that the above language also covers Liberty for its own direct negligence. But, every case cited by

Liberty has language that is different from the Umbrella Policy language here, and has been distinguished for that reason by the cases that actually do apply. The district court correctly ruled that State Farm had fulfilled its obligations to Liberty under the Umbrella Policy by settling all allegations as to Liberty's vicarious liability for Riteway's performance of its operations in connection with the homeowner-insureds claims against Liberty and Riteway. Liberty has shown no basis for reversal of the district court's ruling as to the Umbrella Policy.

## ARGUMENT

### THE DISTRICT COURT CORRECTLY RULED THAT STATE FARM HAD NO FURTHER INDEMNITY OBLIGATION UNDER THE UMBRELLA POLICY

The district court correctly held that the applicable Umbrella Policy provisions limit coverage for Liberty to its vicarious liability for operations that its contractor Riteway performs. Subsection d of the Umbrella Policy, in pertinent portion, provides the following as to "Who is an Insured" under the policy:

d.  any person or organization for whom you have agreed to provide such insurance as is afforded by this policy. Such agreement must be in writing. ***This applies only with respect to:***

  *(1)  operations you [Riteway] perform;*

  (2)  facilities you own or use;

  (3)  the underlying limit with respect to your insurance with respect to such operation or facility[.]

(DE 36-3, p 13).

Liberty argues that the District Court was wrong in finding that there was no coverage for Liberty's direct negligence under the Umbrella Policy, citing a line of cases, including *Container Corp. of America v. Maryland Cas. Co.*, 707 So. 2d 733 (Fla. 1998), which found that language in additional insured provisions or endorsements providing coverage to additional insureds for liability ***arising out of*** the named insureds' operations was ambiguous as to whether it covered the additional insureds also for liability for their own direct negligence.

There is a distinction between the "arising out of" language used in the cases upon which Liberty relies and the far narrower "only with respect to operations you [the named insured] perform" language used in the umbrella policy here. As explained in the case of *Koala Miami Realty Holding, Inc. v. Valiant Ins. Co.*, 913 So. 2d 25 (Fla 3d DCA 2005), inexplicably relied upon by Liberty:

> The next question is whether the policy provides coverage for Koala's own negligence. The phrase "arising out of" used in the Valiant policy has been held to be ambiguous as it cannot be determined from the language of that phrase whether it is the named insured's or the additional insured's own negligence which is covered. *See Container Corp. v. Md. Cas. Co.*, 707 So. 2d 733 (Fla. 1998); *Fla. Power & Light Co. v. Penn Am. Ins. Co*., 654 So. 2d 276 (Fla. 4th DCA 1995); *Container Corp. v. McKenzie Tank Lines, Inc.*, 680 So. 2d 509 (Fla. 1st DCA 1996). In each of these cases, the policy was construed against the insurer due to the ambiguity. Each case held that due to the ambiguity, the policy provided coverage not only for the additional insured's vicarious liability, but also for the additional insured's direct negligence. Even though the policies contained the phrase "arising out of," or an analogous phrase, coverage for the direct

negligence of the additional insured would not have been provided had the policies contained specific language limiting coverage to only the named insured's direct negligence. *See Fla. Power & Light Co.* [v. *Penn. America Ins. Co.*], 654 So. 2d [276] at 278 [(Fla. 4th DCA 1995)]("but only with respect to acts or omissions of the named insured"). The Valiant policy does not contain any such limiting language. Therefore, we find that the Valiant policy provides coverage to the additional insured, Koala, for Koala's own negligence.

913 So. 2d at 27. Here, the Umbrella Policy does contain the specific language limiting coverage: "but only with respect to operations you [the Named Insured, Riteway] perform." (DE 36-3, p 13).

The Florida Supreme Court, in *Garcia v. Federal Ins. Co.*, 969 So. 2d 288 (Fla. 2007), also drew the distinction between "arising out of" policy language, which is considered ambiguous and/or attenuated, and thus broadly construed, and "with respect to" and "because of" language, which limits coverage. 969 So. 2d at 293. Commenting on its own prior decision in *Container Corp.* and the *Consolidation Coal* decision cited therein, the Florida Supreme Court noted in *Garcia*:

No Florida court has interpreted the precise language at issue. We have, however, considered similar language. In *Container Corp.,* we noted that if an insurer had wished to limit an additional insured's coverage to vicarious liability it could have included language similar to that used in *Consolidation Coal*: "Had Maryland wished to limit Container's coverage to vicarious liability, it could have done so by clear policy language. *See Consolidation Coal Co. v. Liberty Mut. Ins. Co.,* 406 F. Supp. 1292 (W.D. Pa. 1976) (construing coverage language as insuring the additional insured for vicarious liability)." *Container Corp.*, 707 So. 2d at 736.

In *Consolidation Coal*, a coal company hired a hauler to transport various coal products. As part of the contract, the hauler made the coal company

an additional insured on its liability insurance policy. The endorsement covered the coal company, "***but only with respect to acts or omissions of the named insured***." During the contract term, a coal company train nearly struck an employee of the hauler. The company settled the employee's subsequent claim and sought indemnification from the insurer. The insurer denied coverage, arguing that the endorsement limited coverage to the coal company's vicarious liability for the hauler's acts or omissions. A federal district court agreed, holding that "[t]he most likely meaning of the subject phrase is that it attempts to limit coverage to those instances where the acts or omissions - the negligence - of [the named insured] leads to [the coal company's] liability." 406 F. Supp. at 1300. We approved this analysis in *Container Corp.* and confirm that view today.

*Garcia*, 969 So. 2d at 292.

The cases relied upon by Liberty Mutual do *not* have language similar to that used in the umbrella policy here. *Monticello Ins. Co. v. City of Miami Beach*, 2009 WL 667454, *1 (S.D. Fla. Mar. 11, 2009), *Zurich American Insurance Co. v Southern-Owners Insurance Co*., 314 F. Supp. 3d 1284, 1291 (M.D. Fla. May 21, 2018),[4] and *Koala Miami Realty Holding, Inc. v. Valiant Ins. Co*., 913 So. 2d 25, 26 (Fla 3d DCA 2005) all had "arising out of" additional insured endorsements, providing coverage "but only with respect to liability arising out of operations performed for" the additional insured.

*Container Corp.* itself had a totally inapposite additional insured endorsement

---

[4] The *Zurich American* decision is not only inapposite because it uses the "arising out of" language that has been deemed ambiguous (and which is not present in the State Farm Umbrella Policy here), but it also was expressly vacated by the district court pursuant to a settlement by the parties. *Zurich American Insurance Co. v Southern-Owners Insurance Co*., 2020 WL 1884708 (M.D. Fla. Jan. 9, 2020).

that only identified Container Corp. as an additional insured under the Maryland Casualty Policy, and then set out this cryptic notation: "Interest for operations at operations site by Southern Contractors, Inc." 707 So. 2d at 735. The *Container Corp.* court held that this language did nothing to limit the coverage to Container Corp.'s vicarious liability only, such that the additional insured amendment could be construed to extend coverage for Container Corp.'s own negligence as well.

The language used in the Umbrella Policy here limits coverage with the language "only with respect to operations you [the Named Insured - Riteway] perform." It does not contain the attenuated "arising out of" language, as the Florida Supreme Court called it in *Garcia*, 969 So. 2d at 293, and it certainly does not say: "Interest for operations at operations site by [Named Insured]." *Container Corp.*, 707 So. 2d at 735.

Liberty also cites *Florida Power & Light Co. v Penn. America Ins. Co.*, 654 So. 2d 276 (Fla. 4th DCA 1995), which was discussed in *Container Corp.* The language used in the *Penn. America* excess policy case provided:

(2) Each of the following is an insured under this policy to the extent set forth below:

(a) any person, organization, trustee or estate to whom or to which the named insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, ***but only with respect to operations by or on behalf of the Named Insured or to facilities used by the Named Insured*** and then only to the extent of the "coverage required" by such contract and for the "limits of liability

specified in such contract", but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy.

654 So. 2d at 278 (court's emphasis). After reviewing case law, the court concluded that the language was ambiguous, stating:

In the instant case, the pertinent policy language merely reads "but only with respect to operations by or on behalf on the Named Insured," Eastern. ***No language in the provision requires fault on behalf of Eastern before FPL can be considered an additional insured.*** Thus, the language, similar to the language utilized in the cases discussed above, can only be considered ambiguous at best. ***The language that was employed by Penn America required only that FPL's liability arise out of the operations of Eastern.***

654 So. 2d at 279.

The language in *Penn. America* - referencing "operations by or *on behalf of* the Named Insured" - is different from that used in the Umbrella Policy here, where the coverage is limited to operations actually performed by Riteway: "only with respect to operations you [the Named Insured - Riteway] perform." As with the *Garcia* and *Container Corp.* decisions, *Penn. America* specifically refers to the language from the *Consolidation Coal* policy as being appropriate to construe as limiting the coverage to the additional insured's vicarious liability. 654 So. 2d at 279. The *Consolidation Coal* language, again, was: "... but only with respect to acts or omissions of the named insured in connection with the named insured's operations." 406 F. Supp. at 1294.

As in *Consolidation Coal*, the Umbrella policy language here limits coverage to apply "only with respect to" acts of the named insured *itself* in performing operations. Liberty's brief does not even mention *Garcia*, the most recent Florida Supreme Court pronouncement on this subject of coverage for an additional insured's own negligence. But, under *Garcia* and *Penn. America*, the language of the Umbrella Policy here limited coverage to additional insureds' liability for acts performed by the named insured. The Umbrella Policy thus provided coverage only for Liberty's vicarious liability for operations performed by Riteway.

State Farm fulfilled its indemnification obligations under the Umbrella Policy by settling and paying all claims and allegations that Suarez-Sosa made against Liberty for its vicarious liability for Riteway's performance. The district court correctly so held. The district court's ruling should thus be affirmed, regardless of the reasons for the ruling with which Liberty has taken issue. "In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245 (1937). *See also, e.g., Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998).

## CONCLUSION

Based on the foregoing facts and authorities, Appellant/Cross-Appellee State Farm respectfully submits that Court should affirm the district court's summary judgment ruling that State Farm owes no further indemnification to Appellant Liberty under the Commercial Liability Umbrella Policy.

Respectfully submitted,

GREEN, ACKERMAN & MATZNER, P.A.
jgreen@gaflaw.com
1200 North Federal Highway, Suite 301
Boca Raton, Florida  33432
Telephone:  (561) 347-2400
-and-
RUSSO APPELLATE FIRM, P.A.
e-service@russoappeals.com
7300 North Kendall Drive, Suite 600
Miami, Florida  33156
Telephone: (305) 666-4660
Facsimile:  (305) 666-4470

Counsel for Appellant/Cross-Appellee


By:     /s/ Elizabeth K. Russo
ELIZABETH K. RUSSO
Florida Bar No. 260657
ekr@russoappeals.com

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)**

I certify that this Reply Brief and Answer Brief on Cross-Appeal complies with the type-volume limitation set forth in FRAP 28.1 and 32(f). This brief contains 6,776 words.

/s/ Elizabeth K. Russo

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the foregoing has been served electronically through the E-Portal on this 4th day of February, 2021 by using the CM/ECF eFiling Portal, to:

Jeffrey S. Lapin, Esquire
Jonathan R. Rosenn, Esquire
Lapin & Leichtling, LLP
255 Alhambra Circle, Suite 1250
Coral Gables, Florida 33134
jlapin@ll-lawfirm.com
eservice@ll-lawfirm.com
jrosenn@ll-lawfirm.com

/s/ Elizabeth K. Russo